CRAIN, Judge.
On March 1, 1986, at approximately 12:45 p.m. Roy Goff was driving his car in a westerly direction on Florida Boulevard in the city of Baton Rouge. Mrs. Goff was a passenger in the car. The traffic flow was slow and heavy in the vicinity of Cortana Mall. Mr. Goff stopped at a red semaphore light at the intersection of Florida and Cora Boulevards.
When the light turned green Mr. Goff proceeded west through the intersection, and traveled approximately four car lengths when he noticed that traffic immediately preceeding the Goffs was temporarily halted. Accordingly, Mr. Goff applied his brakes and stopped behind the preceeding cars. His vehicle was then hit from the rear by a car driven by Mrs. Mary Aiello. The Goffs suffered personal injuries as a result of the accident.
This personal injury action was instituted by the Goffs against Mrs. Aiello and her insurer. After trial on the merits the jury rendered a verdict finding defendants 75% at fault and Mr. Goff 25% at fault. General damages in the sums of $1,000 was awarded to Mr. Goff and $10,000 was awarded to Mrs. Goff. Judgment was rendered by the trial court in conformity with the jury verdict. From this judgment plaintiffs appeal alleging as error the jury’s assessment of 25% negligence to Mr. Goff and quantum.
NEGLIGENCE OF MR. GOFF
Appellants contend that the accident was attributable solely to the negligence of Mrs. Aiello in that Mrs. Aiello followed the Goff vehicle too closely under the circumstances, she failed to maintain a proper lookout and failed to control her vehicle. Further, appellants allege that their brake (stop) lights were in working condition at the time of the accident. Defendants do not contest the jury’s allocation of fault.
Conflicting evidence was presented regarding whether the stop (brake) lights on the Goff vehicle were in working condition at the time of the accident. Mrs. Goff and two relatives who lived in the vicinity of the Goff’s home testified that the stop *931 lights were working as Mr. Goff backed the car from the garage on the morning of the accident.
Mrs. Aiello testified that she stopped for the red light behind the Goffs. After the light turned green she proceeded through the intersection remaining approximately one car length behind the Goffs. She traveled approximately four car lengths past the intersection when without warning the Goff vehicle stopped and she was unable to avoid the collision. She stated that from the time she proceeded through the intersection to the time of the accident she was driving no more than ten miles per hour, and that her car struck only the bumper of the Goff car. She informed the investigating officer of the Goffs’ defective brake lights.
Miss Tania Euggino, Mrs. Aiello’s granddaughter, was a passenger in the Aiello vehicle at the time of the accident. Miss Euggino testified that they were driving in heavy traffic (stop and go traffic). They stopped at the red light behind the Goffs. After proceeding approximately four car lengths through the intersection the Goff vehicle suddenly stopped without warning; the stop lights had not illuminated. She stated that the impact was slight and that there was no damage to the Aiello car.
Officer Pauline Burkett, the investigating officer, testified that she noted on the accident report that the Goff vehicle had defective brake lights. She stated that although she had no independent recollection of the investigation, when a witness or a party involved in an accident alleges such a defect, it is her practice to have the driver test them in her presence and record the results. She also related that the damage to both vehicles was minimal.
Motor vehicles registered in this state and manufactured after December . 31, 1962, must be equipped with at least two stop lamps. La.R.S. 32:306. The stop lamps should be located on the rear of the vehicle; display a red light which should be visible from a minimum of 300 feet to the rear; and should be activated when the driver applies the foot brake. La.R.S. 32:319(A). Additionally, no person should stop or suddenly decrease the speed of his vehicle without the appropriate signal (activation of the stop lights) to the driver of an immediately following vehicle. La.R.S. 32:104 and 105.
A driver who intends to stop has the duty to give the appropriate signal to following vehicles. La.R.S. 32:104; Guillory v. Gulf South Beverages, Inc., 506 So.2d 181 (La.App. 5th Cir.1987). In reaching its verdict, the jury obviously found that the stop lights on the Goff vehicle had malfunctioned and that such defect was a cause of the accident.
The jury’s determination in this respect and its apportionment of percentages of fault to the respective parties are factual findings which should not be disturbed on appeal unless clearly wrong. Aucoin v. Me B R Management Co., 525 So.2d 265 (La. App. 1st Cir.), writ denied, 530 So.2d 90 (La.1988). After careful review of the record we find no such error therein.
QUANTUM
a. Mrs. Goff
Mrs. Goff was awarded $10,000 in general damages. At the time of the accident Mrs. Goff was sixty-seven years old. The accident occurred on March 1, 1986. At the accident scene she complained of neck pain but declined medical treatment at that time. On March 4, 1986, she was examined by Dr. Ewell Kemp, her family physician, for neck and shoulder pain and a bruised leg. Dr. Kemp testified that x-rays taken on that date revealed pre-existing degenerative osteoarthritis; the condition was asymptomatic prior to the accident; the diagnosis on that visit was cervical strain and contusion of the leg. He further stated that a ruptured or herniated disc does not always manifest itself immediately after the accident and is sometimes difficult to diagnose.
After being treated initially by Dr. Kemp, Mrs. Goff was treated by Dr. Alan Johnstone. At his recommendation she underwent a CAT scan of the cervical spine on September 29, 1986, and received a course of physical therapy.
*932 Dr. Roger Gordon West, accepted by the court as an expert in the field of Diagnostic Radiology, was the radiologist who interpreted the CAT-scan. Dr. West testified that the CAT-scan revealed degenerative changes in the cervical spine; and a probable mid-line disc herniation at level C-6-7 with no apparent calcification. He further stated that the absence of calcification surrounding the herniated disc indicated that the herniation was a recent occurrence.
Mrs. Goff was examined by Dr. Kenneth Vogel, neurosurgeon, on April 14, 1988. Dr. Vogel testified by deposition. He stated that the lumbar examination revealed mild limitation of motion, mild bilateral muscle spasm, moderate brachial plexus tenderness on the left, and cervical pain upon palpation. He reached a diagnosis on the basis of the patient’s history, the results of the physical examination and review of the Cat scan. The diagnosis was herniated cervical disc with spondylosis. He stated that spondylosis refers to degenerative changes in the spine. It is not an unusual occurrence in a sixty-seven year old woman and can result from either trauma or degenerative changes due to the aging process. Further, if she was asymptomatic prior to the accident then the symptoms were most probably causally related to the accident. Dr. Vogel recommended conservative treatment unless the pain becomes intractable and she becomes unable to engage in routine activities. He was unable to assign a disability rating because he stated she had not yet completed the full course of medical treatment for her condition.
Mrs. Goff testified that since the accident she is unable to function normally; her left hand often “goes to sleep” when she engages in everyday tasks such as food preparation. When reclining she has similar problems with her arm. Her neck is continuously sore and her leg gives her “trouble” after she has been standing or walking for long periods of time. At the time of trial she was taking aspirin, tylenol and naprosyn when prescribed.
The trier of fact has great discretion in fixing the amount of damages due. Its determination will not be disturbed on appeal absent an abuse of discretion. Given an abuse of discretion it can only be raised (or lowered) to the lowest (or highest) amount which is reasonably within the discretion of the trier of fact. Creel v. S.A. Tarver & Son Tractor Co., Inc., 537 So.2d 752 (La.App. 1st Cir.1988).
After examining the facts and circumstances of this case and the injuries suffered by this particular plaintiff, we conclude that an award of $50,000 is the lowest award which is reasonably within the discretion of the trier of fact. Accordingly, we amend the general damages award to $50,000.
b. Mr. Goff
At the time of the accident Mr. Goff was sixty-six years old, a retired construction worker. Mr. Goff had previously undergone several surgeries for cancer of the vocal chords. After the accident he was referred to Dr. Andrew Kucharchuk, an orthopedist, for complaints of pain in the neck, right hand and shoulder. He was initially examined by Dr. Kucharchuk on March 28, 1986. Dr. Kucharchuk testified that upon physical examination he noted marked weakness on the right side in the right upper extremity; very restricted range of motion; positive Tinel’s sign in the carpal tunnel; and wasted muscles of the right shoulder apparently of long duration. He further stated that a CAT scan revealed severe osteoarthritic changes which apparently predated the auto accident. Dr. Kurcharchuk’s diagnosis was acute whiplash injury which aggravated Mr. Goffs pre-existing neck condition. In his opinion the carpal tunnel syndrome was most probably related to the cervical arthritis. He further stated that Mr. Goffs condition had improved by the second visit and that Mr. Goff should have returned to his pre-accident condition within six to eight weeks after the accident.
Mr. Goff was treated by Dr. Alan John-stone until approximately January, 1987, then received physical therapy for approximately three weeks.
Mr. Goff was examined by Dr. Vogel on April 14, 1988. Dr. Vogel testified by dep *933 osition that the neurological examination revealed mild limitation of motion, mild muscle spasm on palpation, no brachial plexus tenderness, and a significant degree of weakness in the right grip. Dr. Vogel stated that he reviewed the previously run CAT-scan and found that it revealed moderate to mild degrees of spondylosis. Dr. Vogel’s diagnosis was cervical spondylosis and possible cervical facet anthropathy (joint pain). He stated that Mr. Goffs discomfort will most probably continue because spontaneous remission is an unusual occurrence when the symptoms persist for at least one year.
Mr. Goff testified that at the time of trial he felt fairly well, however, his right arm function was greatly limited.
The trier of fact apparently concluded that Mr. Goffs acute whiplash was not the cause of the weakness or loss of function in the right arm, nor was it the cause of the carpal tunnel syndrome. However, after careful review of the record we conclude that the award of $1,000 in general damages to Mr. Goff is inadequate to compensate him for the pain and suffering caused by the whiplash. We find that the sum of $2,500 is the lowest amount which is within the discretion of the trier of fact.
Accordingly, the judgment of the trial court is affirmed in part and amended in part and as amended, affirmed. Costs are assessed to defendants.
AFFIRMED IN PART, AMENDED IN PART AND AS AMENDED, AFFIRMED.