589 So.2d 1215 (1991)
Angela Walle GERACI
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT and State Farm Mutual Automobile Insurance Company.
No. 90-CA-1723.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1991.
*1216 James G. Derbes, Derbes & Waldrup, New Orleans, for plaintiff/appellee.
Sidney H. Cates, IV and Troy N. Bell, Carter & Cates, New Orleans, for defendant/appellant.
David V. Batt and Lane A. Schaffer, Lobman, Carnahan & Batt, Metairie, for defendant/appellee.
Before KLEES, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
The sole issue in this appeal is the proper measure of damages due plaintiff Angela Geraci for the injuries she received in a vehicular accident on January 4, 1987.

FACTS
The accident occurred when the Chevrolet Blazer in which Ms. Geraci was riding unexpectedly left the highway and plunged into a canal, allegedly because of a defect in the highway shoulder. Ms. Geraci, who was riding in the front passenger seat, was propelled partially under the dashboard by the forward motion of the vehicle; she suffered injury to her neck and back. She was taken by ambulance to Methodist Hospital, where she was placed in traction for 32 days.
Ms. Geraci filed suit against the Louisiana Department of Transportation and Development (DOTD) and against State Farm Mutual Insurance Company, which had issued a policy of insurance covering her husband, Stacy Geraci, who was driving the vehicle at the time of the accident. DOTD filed a third party demand against Mr. Geraci and State Farm, and State Farm counterclaimed against DOTD.
When State Farm demanded a jury trial, DOTD invoked the provisions of LSA-R.S. 13:5105, which provides state agencies the option of being tried by a judge rather than a jury. After a four-day trial, the jury returned a verdict awarding Ms. Geraci a total of $124,500, while the judge awarded her $248,940. The judge apportioned the fault 90 percent to DOTD and 10 percent to Mr. Geraci, while the jury apportioned fault 87.5 percent to DOTD and 12.5 percent to Mr. Geraci. Judgment against DOTD was entered in compliance with the trial judge's decision. DOTD appeals, admitting liability and percentage of fault, but contesting the quantum.
DOTD argues that the jury award is more appropriate than the judge's award, and requests this court to reduce the plaintiff's award to the sum awarded by the jury. However, under the jurisprudence in this circuit, an appellate court must review the record de novo and make its "own independent factual findings based on the record, without according any weight to the factual findings of either the judge or the jury when those findings are inconsistent." Williams v. City of New Orleans, 433 So.2d 1129, 1137 (La.App. 4th Cir.1983); Aubert v. Charity Hospital, 363 So.2d 1223, 1226-27 (La.App. 4th Cir.), writ denied 365 So.2d 242 (La.1978). Therefore, we will determine damages based solely on our reading of the record, without reference to the judge or the jury awards.

DAMAGES
The evidence presented at trial established that Ms. Geraci suffers from a herniated disc, which has been treated conservatively since the time of the accident. Her personal physician, Dr. Raul Diaz, estimated the chance that Ms. Geraci would be required to undergo surgery to correct one or two discs at some time in the future at 50-50, provided Ms. Geraci follows instructions. He recommended continued conservative treatment at the time of trial. He said that Ms. Geraci's activities will be subject to lifting, weight, twisting, bending, *1217 and climbing restrictions for the rest of her life, even if she choses to undergo surgery since the only purpose of the surgery would be to reduce the plaintiff's ongoing pain. Dr. Diaz stated that Ms. Geraci will have to avoid extreme temperatures, stairs, ladders, scaffolds, heights, and damp areas for the rest of her life.
The uncontested evidence presented at trial established that Ms. Geraci was extremely physically active prior to the accident. She regularly raced boats, volkswagons, and dune buggies. Additionally, she worked with her husband, who was a commercial fisherman, fishing, shrimping, and oystering. The record is also replete with testimony that Ms. Geraci was an avid baseball player and that she regularly played ball five nights a week year round prior to the accident. Between the time of the accident and the trial, she was unable to engage in any of the physical activities she participated in prior to her injuries. Dr. Diaz testified that she would probably never be able to safely play baseball again.
Loss of Past Wages and Fringe Benefits
At the time of the accident, Ms. Geraci had been employed by Shell Oil Company as a clerical worker at the Yscloskey Gas Plant for more than six years; her annual salary was $16,100. The fringe benefits provided by her job included both tax-deferred and non-tax-deferred retirement or investment savings plans; the company made contributions to the tax-deferred plan on a percentage basis depending on the number of years of service. Additionally, Shell provided both medical and dental insurance plans with the company paying a portion and the employee paying a portion. Following the accident, Ms. Geraci continued to receive a salary from Shell for several months. Thereafter, she was placed on "no-pay" status for two years. At the end of the two-year period, when Ms. Geraci was still unable to return to work, her employment was terminated.
The plaintiff's economic expert, Dan Cliffe, calculated Ms. Geraci's past lost wages prior to trial at $48,423.39 and her past lost fringe benefits at $2,421.17. Since these figures were uncontested, we find that Ms. Geraci is entitled to recover the total of those figures in past lost wages and fringe benefits.
Loss of Future Wages and Fringe Benefits
Mr. Cliffe testified that at the time of trial Ms. Geraci, who was 34 years old, had a work life expectancy of 19 years. Mr. Cliffe made four separate calculations relative to loss of future wages. He stated that Ms. Geraci would lose between $70,800 and $108,200 before taxes, and between $70,800 and $95,565 after taxes, if she could someday be employed at minimum wages. If Ms. Geraci is never capable of returning to work, her losses would increase to between $178,800 and $225,700 before taxes, and between $158,760 and $197,530 after taxes.
Some evidence that Ms. Geraci will someday be able to return to some type of employment was presented. Dr. Diaz was not specifically questioned on that issue, stating only that the plaintiff would be subject to the restrictions detailed in the previous section for the remainder of her life. Dr. James Williams, who examined the plaintiff for the DOTD, said that Ms. Geraci could lift up to 25 pounds on an intermittent basis and that she could bend and climb stairs, but not repeatedly. Additionally, Dr. Williams felt that the plaintiff could sit at a desk for eight hours a day. Finally, Dr. Edmund Landry, who examined the plaintiff for Shell prior to the termination of her employment, said that he believed that the plaintiff could work part-time with some restrictions.
The above evidence indicates that Mrs. Geraci will probably be able to return to some type of work at some point in the future. For that reason, we calculate her loss of future wages at $81,200, the average of the two figures calculated by Mr. Cliffe for after-tax losses assuming Ms. Geraci could earn minimum wages.
Mr. Cliffe calculated the plaintiff's loss of future fringe benefits at $54,300, assuming that she would never receive any fringe benefits on a future job. Because we believe that Ms. Geraci will someday be *1218 able to work at a minimum wage job, we believe that Mr. Cliffe's calculation should be reduced on the assumption that she would receive some fringe benefits from her future employment. Thus, we set Ms. Geraci's loss of future fringe benefits at $40,000.
Past and Future Medical Expenses
The parties stipulated that Ms. Geraci had incurred $23,615 in past medical expenses prior to trial. The evidence of future medical expenses presented at trial was minimal. Ms. Geraci stated that she was seeing a doctor once a month at the time of trial. Dr. Diaz testified that Ms. Geraci was required to take some type of medication, both pain relievers and muscle relaxers, most of the period between the accident and the trial, but offered no evidence concerning whether the plaintiff would continue to need medication in the future. Although Dr. Diaz stated that there was a 50-50 chance that the plaintiff would require surgery sometime in the future, no evidence of the projected cost of that surgery was presented. Under the circumstances, we find that $5,000 is sufficient to reimburse the plaintiff for her future medical expenses.
Pain, Suffering, and Mental Anguish
Although Dr. Diaz was the plaintiff's personal physician at the time of trial, she was treated by Dr. Essam Elmorshidy from the time of the accident until he took a leave of absence in August of 1987, when Dr. Diaz took over the plaintiff's treatment. Dr. Elmorshidy testified at trial that during the plaintiff's initial 32-day hospitalization, she was subjected to traction, physical therapy, heat, massage, and muscle relaxants. He said that, despite all her treatment, Ms. Geraci experienced only minimal improvement of her back pain during that time. In fact, Dr. Elmorshidy stated, Ms. Geraci's pain did not improve until July of 1987, when she was hospitalized for a second time to undergo an epidural injection of cortisone and numbing medicine; she stayed in the hospital for two weeks. Additionally, Dr. Diaz testified that Ms. Geraci complained of low back pain at virtually every office visit from the time he took over treatment in August, 1987 until the time of trial. Ms. Geraci will continue to have pain, Dr. Diaz stated.
The evidence also established that Ms. Geraci's lifestyle changed dramatically after the accident. She was required to eliminate most of the physical activities which had been a major part of her life. Her husband testified that she was unable to do the housework as she had prior to the accident. He also stated that their marriage had suffered.
Under the circumstances, we conclude, as did the trial judge, that Ms. Geraci is entitled to $65,000 to compensate her for her pain, suffering, and mental anguish caused by the accident.
Summary of Damages
For the above and foregoing reasons, we would calculate the damages due Ms. Geraci as follows:

Loss of past wages $ 48,423.39
Loss of past fringe benefits 2,421.17
Loss of future wages 81,200.00
Loss of future fringe benefits 40,000.00
Past medical expenses 23,615.00
Future medical expenses 5,000.00
Pain, suffering, and mental
anguish 65,000.00
 ___________
TOTAL $265,659.56

Thus, based on our independent review of the record, we would set Ms. Geraci's damages at $265,659.56. However, Ms. Geraci did not file a cross appeal in this court, requesting an increase in the damages, relying instead on the argument that the trial judge's calculation of damages was more appropriate than the jury's calculation. Thus, this court has no jurisdiction to increase the plaintiff's damages above the amount awarded by the trial court. Additionally, considering the extent of the injuries suffered by Ms. Geraci, the difference between the calculation of damages made by the trial court and the calculation of damages made by this court is insignificant. That difference is easily explained by the fact that a trial judge, who bases his decision on live testimony, has a different perspective than an appellate court, which *1219 bases its decision on review of a cold record. Therefore, the trial court judgment awarding Ms. Geraci $248,940 is affirmed.

LIABILITY
State Farm also filed an appeal on the 10 percent liability assigned to Mr. Geraci by the trial judge. However, the record contains ample evidence to support that finding. Mr. Geraci testified that he was aware of the condition of the shoulder of the roadway where the accident occurred. Nevertheless, he intentionally swerved the vehicle toward the shoulder when he saw a small animal in the headlights. Thus, the trial judge was not manifestly erroneous in finding Mr. Geraci 10 percent at fault. That portion of the judgment is affirmed.

CONCLUSION
The trial court judgment awarding Ms. Geraci $248,940 is affirmed. DOTD is required to pay the costs of this appeal.
AFFIRMED.