634 So.2d 406 (1994)
Howard N. NUGENT, Jr. & Cathy Nugent, Plaintiffs-Appellants,
v.
CONTINENTAL CASUALTY COMPANY, et al., DefendantsAppellees.
No. 93-867.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
Rehearing Denied April 7, 1994.
George Arthur Flournoy, Alexandria, for Howard N. Nugent Jr., and Cathy Nugent.
Edward E. Rundell, Alexandria, for Continental Cas. Co., et al.
William H. deLaunay Jr., Joseph J. Bailey, Alexandria, for Allstate Ins. Co.
Before GUIDRY, LABORDE and THIBODEAUX, JJ.
THIBODEAUX, Judge.
Plaintiff, Cathy Nugent, appeals the amount of a jury award for damages in her personal injury suit against Continental Casualty Insurance Company and Allstate Insurance Company. For the following reasons, *407 we find the jury abused its discretion in awarding damages, amend the judgment to increase Ms. Nugent's general damages to $40,000.00 and medical expenses to $20,752.02, and affirm.

FACTS
Cathy Nugent had the supreme misfortune of being involved in four automobile accidents in the span of two and a half years. None was her fault. At issue before this court are the first two. It has not been argued that the latter two contributed to any of the injuries she claimed.
The first accident occurred on November 22, 1989 when Ms. Nugent's automobile struck one owned by Brenda Sewell as she attempted to cross an intersection in Alexandria, Louisiana. Sewell, an uninsured motorist, failed to obey a stop sign posted for her lane at the intersection and crossed into the path of Ms. Nugent's vehicle.
The second accident occurred on August 8, 1990. Ms. Nugent was a passenger in a pickup truck driven by her brother, Kenneth A. Cosby. Cosby was attempting to merge onto Louisiana Highway 28 in Pineville, Louisiana when the vehicle in front of him suddenly stopped. The front bumper of Cosby's truck struck the rear of the other vehicle and the resulting impact threw Ms. Nugent from her seat and into the windshield.
Ms. Nugent was allegedly injured in both accidents. She claims, and the jury found, the majority of her health problems stems from the first accident with the second accident compounding those obtained in the first.
After the first accident, she was treated briefly at a local hospital's emergency room for neck and back pain. She then went to her family physician who referred her to an orthopedist, Dr. Vanda Davidson. Dr. Davidson initially treated her for cervical and lumbar strain. When conservative treatmentsuch as physical therapy and medicationgave no relief, he ordered a CT scan which revealed a bulge at L4-5. He also noted that in March of 1990, she began manifesting symptoms of carpal tunnel syndrome. After her condition continued to deteriorate, he suggested she consult a neurosurgeon.
Ms. Nugent obtained treatment from Dr. John Jackson, a neurosurgeon in New Orleans. An MRI and CT scan ordered by Dr. Jackson revealed a possible herniation of the C5-6 vertebra of the neck as well as confirmed Dr. Davidson's findings of a bulging at L4-5. Dr. Jackson also suspected Ms. Nugent had carpal tunnel syndrome and his suspicions were confirmed by the results of a nerve conduction test.
Dr. Jackson initially elected to treat both her disc pathology and the carpal tunnel syndrome conservatively. However, her pain and discomfort from the carpal tunnel syndrome grew unbearable and a successful carpal tunnel release was performed in July of 1992.
Her complaints of neck and low back pain persisted and Dr. Jackson was unable to assuage them. He noted that her condition continued to deteriorate and expressed concern over the amount of medication she was taking to combat the pain. He testified that he fears conservative treatment will not remedy her ailment and believed that surgery could not be ruled out as a possibility in the future.
At the request of defendants, Ms. Nugent submitted to an examination by Dr. James McDaniel. Dr. McDaniel performed the examination and proclaimed her to be free of any neurological or orthopedic injury.
Suit was originally filed against numerous parties. Through various procedural avenues, all were dismissed with the exception of Continental, Ms. Nugent's uninsured motorist insurer, and Allstate, Cosby's liability insurer.
Prior to trial, the video depositions of Drs. Jackson and McDaniel were taken. Examination of the witnesses was combative among counsel for the parties and occasionally between counsel and the witnesses. The result was that many questions and answers were objectionable and had to be edited from the video tapes shown to the jury. Most of the evidentiary objections raised by Ms. Nugent concern this testimony.
*408 Trial was held over four days. On August 14, 1992, the jury reached a verdict. It found that Ms. Nugent had been injured, with 90% of the damages attributable to the November 22, 1989 accident and 10% attributable to the accident of August 8, 1990.
The jury assessed damages as such:

Physical pain and suffering,
past and future .................. $ 7,500.00
Loss of enjoyment of life,
past and future .................. $ 2,500.00
Past medical expenses ............ $ 11,946.00
Future medical expenses .......... $ 5,000.00
Scarring ......................... $ -0-

Mr. Nugent's claim for loss of consortium was tried separately by the trial judge. He was awarded $6,000.00.
Dissatisfied with the jury award amount, Cathy Nugent filed this appeal.

ISSUES
Ms. Nugent raises two issues:
(1) Whether failure to exclude certain evidence was error that prejudiced the jury's decision; and,
(2) Whether the jury abused its discretion in its award for damages.

LAW & ANALYSIS

I. Evidence
Ms. Nugent contends that defendants utilized societal dissatisfaction with the legal profession as its chief defense. This so called "lawyer bashing" defense was effected by the alleged characterization of Ms. Nugent as the car-accident prone, suit-happy wife of a very successful trial attorney who is also very litigious. They also claim that the testimony of defense medical expert, Dr. McDaniel, was evasive, adversarial and highly prejudicial. They assert that the foregoing combination of evidence and testimony severely prejudiced the jury against their case, resulting in an abusively low award and warranting reversal and de novo review.
Defendants argue that their intent was not to vilify the jury against lawyers or against persons predisposed to filing law suits. They contend that evidence regarding past litigation involving the Nugents reflected on their credibility. They claim that the trial court was astute at separating testimony and evidence which might have been harmful if admitted from that which bore directly and relevantly on the credibility of the Nugents. As to Dr. McDaniel, they claim it was Ms. Nugent's counsel who provoked acerbic comments from him by asking confusing and misleading questions.
Absent clear abuse, we will not intrude on the broad discretion of a trial court in evidentiary decisions. It is within the trial court's province to determine the potential for prejudice afforded by certain evidence and testimony and the degree to which such prejudice might exceed probative value and taint the jury verdict. Gongora v. Snay, 626 So.2d 759 (La.App. 5th Cir.1993); Bourgeois v. McDonald, 622 So.2d 684 (La.App. 4th Cir.1993); City of Baton Rouge v. Tullier, 401 So.2d 422 (La.App. 1st Cir.1981).
This was a highly contested matter. The trial court carefully considered the issues surrounding the objections and ruled as he saw fit. While the trial court was not wholly successful at eliminating all irrelevant evidence, any objectionable evidence that slipped through was unavoidable and its effect slight, if any.
This includes the unfortunate comments of Dr. McDaniel concerning attorneys, whom he believes cause patients to complain of nonexistent injuries for the sake of litigation. His comments, albeit inappropriate, were not so acerbic or inflammatory to rise to the level of prejudice. The implication of his comments did not reflect directly on the Nugents but rather on Dr. McDaniel's apparent disdain for some aspects of the legal profession. We cannot say the trial court erred in failing to exclude it. Accordingly, this issue lacks merit.

II. Abuse of Discretion
The second issue concerns the jury award. Ms. Nugent contends the jury awards for general damages and past medical damages are too low. We agree.
We cannot reconcile the objective findings of the medical expert witnesses and the award given Ms. Nugent. The jury award is *409 incongruous on its face. Defendants argue that the jury award reflects the jury's disbelief in the credibility of Ms. Nugent and her witnesses. They claim the jury believed the opinion of Dr. McDaniel and made the appropriate award.
Such a position is illogical. Dr. McDaniel made the following conclusions after his examination of Ms. Nugent:
(1) No abnormalities in her lower back;
(2) Although she had "a slight restriction of rotation and side-to-side bending" of her neck, the objective tests of her neck were essentially normal;
(3) Her Carpal Tunnel Syndrome was not related to the first accident (or any other accident);
(4) Her complaints of injuries were not consistent with any long standing cervical injuries;
(5) A slight bulge in her neck vertebrae would not account for her complaints of pain; and,
(6) There was no evidence that an orthopedic or neurological injury persists.
Given the foregoing conclusions, it stands to reason that had the jury chosen to believe the testimony of Dr. McDaniel, Ms. Nugent would have received no compensation whatsoever as it was his conclusion that she was not injured.
This court is well aware of Dr. McDaniel's reputation for testimony that often crosses the border into advocacy. See, Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3d Cir.1993). By his testimony in the record before us, we see it is a reputation well-deserved. Moreover, his opinion is based on only one examination of Ms. Nugent. For that reason, it is entitled to less weight than that of her treating physicians. Chevalier, supra; Fontenot v. T.L. James & Co., Inc., 563 So.2d 909 (La.App. 3d Cir.1990).
We look now to the objective medical evidence upon which the jury did rely. Dr. Davidson testified that his initial examination of Ms. Nugent revealed a tightness or spasms in the left side of her neck (the trapezius muscle) and tenderness in her low back, with bending limited to about one third of normal. A neurological exam revealed no abnormalities. X-rays were taken and were unremarkable. At that time, Dr. Davidson diagnosed a strain of her neck and back as a result of the accident. She was treated with physical therapy and medication.
On her next visit, Ms. Nugent complained of worsening pain. Dr. Davidson noted she had developed some tightness and spasms in the muscles of the right side of her low back. The neurological exam was normal but for some weakness in the muscles of the right side. During this visit, Ms. Nugent related to Dr. Davidson that she had fallen at home on several occasions and injured her knee. Dr. Davidson was concerned that nerve irritation in the low back area caused weakness in her legs, resulting in the falls. As a result, he ordered a CT scan.
The CT scan revealed a slight bulging of the disc between the fourth and fifth lumbar vertebrae (L4-L5). He testified it was at that point he became concerned about the possible development of disc pathology.
During a visit on March 30, 1990, Ms. Nugent was still having spasms in the muscles of the left side of her neck. She also complained of a numbness in her hands and arms. Dr. Davidson began to suspect she might have carpal tunnel syndrome. He suggested she consider seeking help from a neurologist.
Finally, Dr. Davidson commented that Ms. Nugent's carpal tunnel syndrome could have resulted or developed from the impact suffered in the first accident if, as Ms. Nugent claimed, she attempted to brace herself by tightly gripping the steering wheel. He also testified that a person could suffer significant pain from a bulging disc and still have a normal neurological examination. He stated that it is unusual for someone 32 years old Ms. Nugent's age at the time of the accidentto have the disc problems she exhibited.
The other treating physician, Dr. Jackson, fairly echoed the opinion of Dr. Davidson. *410 He performed a neurological exam which was negative except for some decrease in sensation of the toes of the left foot. He opined that it could be caused by irritation of a nerve root in the lumbar spine. He reviewed a CT scan and a MRI performed on Ms. Nugent and concluded she had a bulging disc in the cervical area, extending more to the right side of the neck, at C6-7. He believed she had a bulging disc at the L4-5 level as well and "a very slight bulging disc at the L3-4 level" of the lumbar spine. He was of the opinion that the bulges caused her pain.
Dr. Jackson noted that Ms. Nugent was having increasing numbness and pain in her left hand. Nerve conduction tests were performed and the results confirmed that she had carpal tunnel syndrome. He performed a carpal tunnel release on July of 1992 that was apparently successful. He testified that the impact of the first accident could have caused her carpal tunnel syndrome.
Because Ms. Nugent's pain persisted, Dr. Jackson ordered a myelogram. The results revealed a bulging at the C5-6 level and a slight bulging at the L4-5 level. He stated that the bulge at L4-5 appeared to be projecting slightly into the neuroforamen. He said this is an area where it could irritate the nerve root and cause pain. He distinguished irritation from compression of the nerve root which would be more severe.
Finally, he found Ms. Nugent to be a very credible patient who sincerely wanted relief and a return to normalcy. He was of the opinion that she would not likely improve and expressed concern for the amount of medication she was required to take to obtain relief. He would not rule out surgery although he stated she hoped to avoid it if at all possible.
Ms. Nugent testified that she had been an extremely active woman who enjoyed sharing outdoor activitiessuch as gardening and fishingwith her family. She stated that her constant pain has severely limited the extent and duration to which she can now do these things. Moreover, the medical records support her claims of difficulty sleeping, constant pain in her neck and back, the numbness in her left hand and the general deterioration of her health.
The Louisiana Supreme Court recently reiterated the standard of review of jury awards. In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the court made the following observation:
The standard for appellate review of general damage awards is difficult to express and is necessarily nonspecific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
623 So.2d at 1261.
We have already detailed the relevant objective medical evidence. There is definite consistency in the opinions of Drs. Davidson and Jackson. Considering the particular facts of this case, the jury did not give sufficient weight to the various injuries suffered by Ms. Nugent, the degree of pain she endured, the length of time over which she suffered (three years), the fact that she continues to suffer and may need surgery, the degree to which her activity level has been reduced and the fact that she is still quite young. After examining all of the relevant evidence in the record, we conclude that the jury was unreasonable in granting such a low award and committed an abuse of discretion.
*411 Because we have found an abuse of discretion, we must determine an appropriate award by resorting to previous similar awards for guidance. The appropriate award is the lowest reasonable award the jury could have given had it not abused its discretion. Youn, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
Our review of awards in cases in which the plaintiff has suffered similar injuries finds the lowest possible award of general damages for Ms. Nugent to be $40,000.00. Compare with Smith v. Flotation Services, Inc., 596 So.2d 343 (La.App. 3d Cir.1992)award of $30,000.00 for cervical and lumbar strain, bulging lumbar disc; ANMAC Foundation v. St. Patrick's Hospital, 594 So.2d 951 (La. App. 3d Cir.1992)award of $27,000.00 general damages for cervical and lumbar strain, bulging cervical disc at C5-6; Goff v. Alello, 563 So.2d 929 (La.App. 1st Cir.1990)award of $10,000.00 general damages for probable mid-line herniation of C6-7 raised on appeal to $50,000.00; Geraci v. State, through the Department of Transportation and Development, 589 So.2d 1215 (La.App. 4th Cir. 1991)Thirty-four year old plaintiff injured in car accident awarded $65,000.00 for herniated disc with possibility of surgery; Horn v. City of Lafayette, 578 So.2d 232 (La.App. 3d Cir.), writs denied, 584 So.2d 1165, 584 So.2d 1167 (1991)plaintiff awarded $50,000.00 after suffering lumbar strain and carpal tunnel syndrome in an automobile accident and underwent an occipital neurectomy and carpal tunnel release on both wrists; Boudreaux v. Schwegmann Giant Supermarkets, 585 So.2d 583 (La.App. 4th Cir.1991), writs denied, 590 So.2d 593, 590 So.2d 595 (1992)plaintiff awarded $75,000.00 for carpal tunnel syndrome and a wrist fracture, both requiring surgery, in a slip and fall suit; Andrus v. Board, 626 So.2d 1224 (La.App. 3d Cir. 1993)plaintiff's general damages award increased to $30,000.00 from $20,000.00 for a two year chronic spasm injury.
Ms. Nugent also contests the award for medical damages. She introduced uncontradicted evidence of medical bills totalling $20,752.02. The jury abused its discretion in not awarding the full amount. Mouton v. Bonnett, 520 So.2d 1145 (La.App. 3d Cir.), writ denied, 521 So.2d 1138 (1988), reconsideration denied, 522 So.2d 567 (La.1988).
Finally, the jury did not abuse its discretion in failing to award Ms. Nugent for scarring. The jury did not believe the scar was so noticeable and unsightly as to warrant a damage award. Our review of the record supports the jury's decision.

DECREE
For the foregoing reasons, the judgment of the trial court is amended to increase the award for future and past pain and suffering and future and past loss of enjoyment of life to $40,000.00; and to increase the award for past medical expenses to $20,752.02. In all other respects, the judgment is affirmed. Defendants are charged with costs of this appeal.
AMENDED AND AFFIRMED, AS AMENDED.
GUIDRY, J., concurs & assigns reasons.
GUIDRY, Judge, concurring.
I do not share the opinion author's assessment of Dr. McDaniel's credibility. Although Dr. McDaniel might be accused of outspokeness, there is nothing in this record which gives cause to doubt the sincerity of his medical opinion which followed his evaluation of Mrs. Nugent.
Dr. McDaniel did not relate Mrs. Nugent's carpal tunnel syndrome to the November 1989 accident, explaining that, in his opinion, in a carpal tunnel syndrome caused by trauma, the symptoms appear immediately. Mrs. Nugent's symptoms did not appear until some four months post-accident. Dr. McDaniel did not testify that Mrs. Nugent received no injury in the accident but opined that she was fully recovered at the time of his examination on July 16, 1992 and that the slight bulges at C5-6 and L4-5 were insignificant and could not account for Mrs. Nugent's wide spread area of neck and back complaints.
*412 I do agree, however, that the jury, in apparent disregard of the trial court's instructions to the contrary, placed too little reliance on the contrary opinions of Mrs. Nugent's treating physicians, Drs. Davidson and Jackson, who had followed and treated Mrs. Nugent over a period in excess of two years. It is well settled that ordinarily treating physicians' testimony should be accorded greater weight than the testimony of a physician who examines a patient on one occasion solely for evaluation. Martin v. Travelers Insurance Co., 546 So.2d 958 (La.App. 3rd Cir.1989). I concur with the majority that, considering the entire record, the jury award constitutes a clear abuse of discretion and must be increased.
For these reasons, I respectfully concur.