598 So.2d 472 (1992)
Donald W. STARNES, et ux., Plaintiffs-Appellees,
v.
CADDO PARISH SCHOOL BOARD, et al., Defendants-Appellants.
No. 23396-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
*474 Rountree, Cox, Guin & Blackman, Shreveport, for defendants-appellants.
Jack M. Bailey, Jr., Georgia P. Kosmitis, Shreveport, for plaintiffs-appellees.
Before SEXTON, LINDSAY and STEWART, JJ.
LINDSAY, Judge.
The Caddo Parish School Board appeals from a trial court judgment in favor of the plaintiff, Donald W. Starnes, who was initially injured in a collision between his car and a school bus. The trial court awarded damages to the plaintiff for injuries sustained *475 in the initial accident. The court also made an award of damages for a subsequent injury which occurred during a volleyball game. However, the plaintiff's damages for the second injury were reduced by fifty percent due to his comparative fault. For the reasons assigned below, we amend the judgment of the trial court, and, as amended, affirm.

FACTS
On May 26, 1986, the plaintiff's car was stopped behind a school bus from which students were disembarking in a Shreveport suburb. The 26-year-old plaintiff was rolling up newspapers for delivery on his newspaper route when the bus backed up and hit his car. Although the plaintiff described his car as being knocked backwards a "couple" of car lengths, the bus driver and an independent witness described the collision as minor. Likewise, the investigating police officer categorized the damage to the Starnes vehicle as moderate. The plaintiff testified that, while he did not specifically recall striking his right knee on anything, a part of his stereo system was mounted on the dashboard close to his knee. He claimed that his knee felt "wobbly" at the scene. However, he did not report any injury to the police officer, and he completed his newspaper route. Later that night, the plaintiff began to experience headaches and stiffness in his neck.
The next morning, the plaintiff went to see Dr. B.L. Bickham, his family doctor and an orthopedic surgeon. Dr. Bickham diagnosed a musculoligamentous strain of the neck, prescribed a muscle relaxant, and recommended that Mr. Starnes, a power lifter, refrain from weight lifting for a week. That evening, the plaintiff went to see Dr. Jon Chicoine, a chiropractor. His complaints at that time included headaches with sharp pains, pain in the right knee, and tightness in his neck and lower and mid-back. He told the chiropractor that he did not recall striking his knee, but he reported that the knee was sore. For several weeks, Mr. Starnes was treated at Dr. Chicoine's office at frequent intervals for his neck and back pains. However, Dr. Chicoine denied "treating" the plaintiff's knee because of the treatment restrictions placed on chiropractors by Louisiana law.
In June, 1986, the plaintiff was referred to Dr. William W. Fox, an orthopedic surgeon, for treatment of his right knee. Dr. Fox diagnosed a sprained knee. He found no evidence of an anterior cruciate injury or instability of the right knee. Dr. Fox saw the plaintiff only on this one occasion.
On September 11, 1986, Mr. Starnes sought treatment from Dr. David Waddell, an orthopedic surgeon, who diagnosed minimal instability in the right knee. The doctor felt that the condition of the knee at that time did not warrant surgical intervention. However, Dr. Waddell prescribed a knee brace to be worn for all sports activities. (Although Dr. Waddell's written report only mentioned the plaintiff's weight lifting activities, he testified that whenever he prescribes such a knee brace, he always tells the patient to use it for any sports activities.)
On September 21, 1986, the plaintiff severely injured his knee while participating in a volleyball game. He was not wearing his knee brace. Dr. Waddell performed surgery the next day.
Dr. Waddell diagnosed an old injury of the anterior cruciate ligament and a new injury to the lateral capsule. He found that the lateral capsule was completely torn in the volleyball game. Dr. Waddell testified that there probably was a causal relationship between the car/bus accident and the second injury.
Following surgery, the plaintiff was hospitalized for three days. After his discharge, the plaintiff recuperated at his mother-in-law's North Carolina home for about four and a half months. On February 2, 1987, the plaintiff returned to his job as a forklift operator at the Libbey Glass distribution center in Shreveport.
The plaintiff and his wife, Alisa Starnes, brought suit against the school board. Following trial, the district court found the school bus driver solely liable for the car/bus accident. It awarded the following damages:
*476 Medical expenses

Dr. Bickham $ 125.00
Dr. Chicoine 2,351.45
Dr. Fox 126.00
Dr. Waddell (9-11-86 visit) 131.00
 __________
TOTAL MEDICAL EXPENSES $ 2,733.45
Pain and suffering $12,500.00
 __________
TOTAL $15,233.45

The trial court found that there was a causal connection between the car/bus accident and the subsequent knee injury. However, as to the second accident, the court held Mr. Starnes to be 50 percent at fault because of his failure to mitigate his damages by following his doctor's instructions to wear the knee brace for all sports activities. The court awarded the following additional damages:

All other medical expenses $ 6,843.73
Pain, suffering, and future disability 65,000.00
Past lost wages 6,916.00
Loss of future earning capacity 5,000.00
 __________
TOTAL $83,759.73
50 PERCENT OF TOTAL $41,879.87

The school board appealed from the trial court judgment. It assigned as error the following: (1) the trial court erred in finding that the plaintiff sufficiently proved causation between the car/bus accident and his injuries; (2) the trial court erred in assessing the plaintiff with only 50 percent of comparative fault in the volleyball accident; and (3) the trial court erred in awarding excessive damages.
In brief, the plaintiff asserted that the trial court erred in awarding only $5,000 in damages for his loss of earning capacity and in assessing 50 percent comparative fault against him. However, a review of the record reveals that the plaintiff neither appealed nor answered the appeal. Thus, these issues are not properly before us. LSA-C.C.P. Art. 2133.

CAUSATION
The school board contends that the trial court erred in finding that the plaintiff sustained any significant injury as a result of the car/bus accident. It observes that the doctors who initially examined the plaintiff found no knee injury and argues that the impact of the collision was so slight that the plaintiff could not have been injured.
A defendant's conduct is actionable under the duty/risk analysis where it is both a cause in fact of the injury and a legal cause of the harm incurred. The cause in fact test requires that, but for the defendant's conduct, the injuries would not have been sustained. The legal cause test requires that there be a substantial relationship between the conduct complained of and the harm incurred. Morrison v. Johnston, 571 So.2d 788 (La.App.2d Cir.1990, writ denied, 575 So.2d 367 (La.1991).
In a personal injury suit, the test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved, through medical testimony, that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident. The plaintiff is aided in establishing this burden by the legal presumption that a medical condition producing disability is presumed to have resulted from an accident if, before the accident, the injured person was in good health, but shortly after the accident, the disabling condition manifested itself. Streeter v. Sears, Roebuck and Company, Inc., 533 So.2d 54 (La.App.3d Cir. 1988), writ denied, 536 So.2d 1255 (La.1989). Here, the evidence shows that before the initial accident, the plaintiff was in generally good health and had no problems with his right knee.
If a plaintiff receives an injury through the negligent act of another which is subsequently aggravated by other acts, then the tortfeasor is only liable for the original injury unless the plaintiff proves that the subsequent injuries were not the result of a separate, independent, and intervening act for which the defendant was in no way responsible. Waggoner v. Marquette Casualty Company, 181 So.2d 475 (La.App.2d Cir.1965); Swan v. Vernon *477 Milling Company, 517 So.2d 1161 (La. App.3d Cir.1987), writ denied, 521 So.2d 1171 (La.1988).
If the negligent actor is liable for an injury which impairs the physical condition of another's body, the actor is also liable for harm sustained in a subsequent accident which would not have occurred had the other's condition not been impaired, and which is a normal consequence of such impairment. Restatement (Second) of Torts § 460 (1965).
An appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262, (La.App.), writ denied, 374 So.2d 660 (La. 1979).
In the instant case, the school board argues that the collision was so slight it could not have caused any harm to the plaintiff. However, this court has avoided the precedent of attempting to measure an injury in direct proportion to the force of a collision when medical experts and lay witnesses establish that a plaintiff sustained injuries. Simpson v. Caddo Parish School Board, 540 So.2d 997 (La.App.2d Cir. 1989); Boykin v. Washington, 401 So.2d 488 (La.App.2d Cir.1981); Seegers v. State Farm Mutual Automobile Insurance Company, 188 So.2d 166 (La.App.2d Cir. 1966). Under the facts of this case, we find no reason to use the force of the collision as the determining factor in assessing the severity of the plaintiff's injuries.
The school board also contends that the medical evidence did not prove a causal connection between the first accident and plaintiff's subsequent injury. It asserts that Dr. Fox's examination detected only a general knee sprain. The school board also argues that Dr. Waddell's testimony was insufficient to carry plaintiff's burden of proof.
While the testimony of Dr. Fox discounted the existence of any serious knee injury as a result of the initial accident, he only examined the plaintiff on one occasion. However, Dr. Waddell, the plaintiff's treating physician, testified that it was more probable than not that there was a causal relationship between the injuries sustained in the car/bus accident and the volleyball game accident (pp. 267-268 of the record). The car/bus accident created an instability in the plaintiff's right knee. But for this instability, the plaintiff's participation in the subsequent volleyball game would not have resulted in such devastating damage to his knee.
The trial court obviously chose to accept the testimony of Dr. Waddell over that of other witnesses. Generally, the testimony of the treating physician should be given more weight than that of a doctor who examines the plaintiff for diagnosis purposes only. Reed v. Arthur, 556 So.2d 937 (La.App.3d Cir.1990). We thus find that the plaintiff proved the necessary causal link between the tortfeasor's actions and the injury sustained to the plaintiff's knee.
Consequently, this assignment of error has no merit.

PLAINTIFF'S COMPARATIVE FAULT IN VOLLEYBALL GAME ACCIDENT
The school board argues that the trial court should have assessed the plaintiff with a higher degree of fault or completely barred him from recovery due to his failure to wear the knee brace in the volleyball game.
In response, the plaintiff contends that Dr. Waddell only instructed him to wear the knee brace while he was weight lifting. However, Dr. Waddell testified that when he prescribes such a knee brace for a patient he advises that it be worn for "any kind of sports activities." Corroborating testimony was given by Jerry Rakes, plaintiff's *478 friend and co-worker. Mr. Rakes stated that the plaintiff wore the brace at work and at the gym and had been told to wear the brace "anytime he was going to involve his legs in anything...."
The doctrine of avoidable consequences bars recovery of those damages which occurred after the initial injury and which might have been averted by reasonable conduct on the part of the plaintiff. The standard is that of a reasonable man under like circumstances. Soileau v. LaFosse, 558 So.2d 294 (La.App.3d Cir.1990). An accident victim is obligated to exercise reasonable diligence and ordinary care to minimize his damages after the injury has been inflicted. Jacobs v. New Orleans Public Service, Inc., 432 So.2d 843 (La. 1983).
The plaintiff was permitted by his physician to participate in sports activities, but he was advised to wear the knee brace while engaged in such activities. As a reasonable person, he was obligated to mitigate his damages and take due care not to further injure himself. Consequently, he must bear a degree of fault in the occurrence of the injury in the volleyball game. However, we do not believe the plaintiff's lapse on this one occasion should completely relieve the school board from all responsibility for the serious knee injury suffered by the plaintiff. As previously noted, his knee was significantly predisposed to further injury as a result of the defendant tortfeasor's actions in causing the car/bus accident. But for the earlier injury, the plaintiff's knee would not have been unstable and the plaintiff's actions in playing volleyball would not have caused the second injury.
The plaintiff specifically sought treatment from Dr. Waddell, a specialist in sports medicine, because of his continuing problems with his knee. Dr. Waddell's evaluation of the plaintiff's condition on September 11, 1991, prompted him to prescribe the knee brace. According to the record, i.e., the bill from Snell's Limbs and Braces, the plaintiff received the brace on or about September 18, 1986. By failing to wear his newly prescribed brace for the volleyball game only three days later, the plaintiff substantially increased the danger of injury to his knee. (The plaintiff testified that this volleyball game was the first sports activity he participated in after the car/bus accident.)
In view of all of these factors, particularly the difficulties Mr. Starnes was still having with his knee during this time period, he should have exercised greater care to safeguard himself against injury. Thus, we find that the trial court's assessment of only 50 percent comparative fault against the plaintiff was clearly wrong.
Findings of the respective percentages of fault under LSA-C.C. Art. 2323 are factual findings. Appellate courts will not disturb such findings unless they are determined to be clearly wrong or manifestly erroneous. Devereux v. Allstate Insurance Company, 557 So.2d 1091 (La.App.2d Cir.1990).
In modifying a trial court's allocation of fault, we apply the principle that we decrease fault to the highest percentage, or increase fault to the lowest percentage, we would affirm, as the case may be. Ogden v. Dalton, 501 So.2d 1071 (La.App.2d Cir. 1987).
Under the facts outlined above, we increase Mr. Starnes' allocation of fault to 70 percent, the lowest percentage of fault we would affirm against a plaintiff in his position. The remaining 30 percent is assessed against the school board.

EXCESSIVE DAMAGES
The school board argues that the trial court erred in awarding excessive damages. Consequently, it asks that the award to Mr. Starnes be reduced to the highest point reasonable. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The appropriate procedure for testing whether the trier of fact has abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff *479 which reasonably could have been made by the factfinder. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La. App.2d Cir.1987).

Car/Bus Accident
For the initial accident, the trial court awarded damages of $2,733.45 for medical expenses (which included $2,351.45 for Dr. Chicoine's services) and $12,500 in general damages for pain and suffering. The school board contends that these damages were excessive because of the minor degree of impact and the plaintiff's failure to relate various symptoms, such as his headaches and anxiety, to this accident. It maintains that certain medical charges, including the chiropractic fees, were for unnecessary treatment and should be excluded from the damages awarded.
As to the claim of unnecessary treatment, the tortfeasor is required to pay the victim for the cost of unneeded medical treatment, including chiropractic care, unless the overtreatment is attributable to bad faith. Tyler v. Richardson, 476 So.2d 899 (La.App.2d Cir.1985), writ denied, 478 So.2d 907 (La.1985). The record is devoid of any evidence of bad faith on the part of Mr. Starnes in seeking treatment from Dr. Chicoine.
The medical evidence demonstrates that as a result of this accident the plaintiff suffered a mild muscle strain of the neck and a mild to moderate anterolateral rotatory instability of the knee. For a period of time, he was required to restrict or temporarily refrain from such recreational activities as weight lifting and power lifting. When he first saw Dr. Waddell in September of 1986, more than three months after the car/bus collision, the plaintiff was still suffering sufficient damage to his knee to merit the prescription of a bulky knee brace for sports activities. His injuries caused him physical discomfort and also contributed to the worsening of his family's already precarious finances.
Consequently, we find no error in the trial court's award of general damages of $12,500 for the initial accident. See and compare Stringer v. State Through Department of Highways, 481 So.2d 720 (La. App.1st Cir.1985).

Volleyball Game Injury
The school board argues that no damages should have been awarded as a result of the volleyball game accident. Alternatively, it argues that the trial court awarded excessive damages, particularly the $65,000 award for pain and suffering and future disability. Also, it contends that the trial court erred in awarding $5,000 for loss of future earning capacity. Since the plaintiff resumed normal work duties and continued to work overtime, it maintains that no damages for lost earning capacity should have been awarded.
The injury suffered by the plaintiff in the volleyball game affected his life-style in several ways. After undergoing a major surgical procedure on his knee, he wore a cast for several weeks. Thereafter, he underwent several more weeks of physical therapy. As a result of the surgery, he was absent from his job at Libbey Glass for 95 work days. He is still required to wear an uncomfortable knee brace for strenuous activities. He must limit his activities because the knee brace cuts off his circulation if it is worn for extended periods of time. Although Mr. Starnes can still lift weights, he is reluctant to participate in sports for fear of further harming his knee. While he still occasionally does power lifting exercises, he testified that he no longer does the "heavy" lifts. Dr. Waddell testified that Mr. Starnes could continue weight lifting but he should avoid anything involving deep squats. Dr. Waddell assessed a 20 percent permanent partial impairment of the plaintiff's right leg as a result of his injury.
Mr. Starnes' family relationships were also adversely affected by his moodiness, depression and anxiety. He suffered mental and emotional problems because of his finances. As previously noted, the plaintiff's financial condition at the time of his injury was already unstable and thereafter worsened because of his injury. He subsequently filed bankruptcy.
*480 We find no abuse in the trial court's award of general damages of $65,000. (In evaluating this award for excessiveness, we have taken into consideration the previously discussed amount of $12,500 awarded for the initial accident.) See and compare Wilson v. Cline, 527 So.2d 420 (La.App.4th Cir.1988), writs denied, 532 So.2d 765, 771 (La.1988); Jones v. Northbrook Insurance Company, 544 So.2d 742 (La.App.3d Cir. 1989), writ denied, 548 So.2d 1234 (La. 1989); Merrill v. Jones, 552 So.2d 466 (La. App.4th Cir.1989); Smith v. Winn-Dixie Louisiana, Inc., 574 So.2d 514 (La.App.3d Cir.1991).
The defendant also complains of the $5,000 award for loss of earning capacity. It contends that this award was improper because the plaintiff resumed his normal work duties at Libbey Glass and continued to work overtime.
An award for loss of earning capacity encompasses the loss of one's earning potentialthe loss or reduction of a person's capability to do that for which he is equipped by nature, training and experience, and for which he may receive recompense. Rodgers v. National Dealer Services, Inc., 508 So.2d 1007 (La.App.2d Cir.1987), writs denied, 512 So.2d 1183, 513 So.2d 1211 (La.1987). Damages for impairment of earning capacity cannot be calculated with certainty, and the trial court must be accorded broad discretion in assessing them. Klein v. Himbert, 474 So.2d 513 (La.App.4th Cir.1985). However, there must be a factual basis in the record for the award. Bailes v. United States Fidelity & Guaranty Company, 512 So.2d 633 (La.App.2d Cir.1987).
The testimony indicated that following his surgery, the plaintiff worked overtime after he returned to work in February, 1987. However, Mr. Starnes testified that he discontinued doing so after his appointment with Dr. Waddell in January, 1990, because the doctor advised him that working more than eight hours a day "could be a problem" and detrimental to the longevity of his work career. However, Dr. Waddell testified that overtime work would not necessarily be detrimental to the plaintiff. He stated that it would depend on the circumstances and the plaintiff's symptomatology. If the overtime work involved standing for extended periods of time, it could cause the plaintiff some pain and, if so, it would be inadvisable. The doctor also said that Mr. Starnes exhibited no indications that he would require future surgery or that he would develop other medical maladies as a result of this injury.
The trial court's award for loss of earning capacity is highly speculative, particularly in view of Dr. Waddell's less than unequivocal testimony. Our review of the evidence convinces us that the plaintiff fell short of proving this element of damages. Consequently, the amount of the plaintiff's award will be reduced to delete the sum of $5,0000 for loss of earning capacity.
Furthermore, we find merit in the defendant's argument that the trial court erred by including Douglas Tietjen's charges of $393 in the total of "all other medical expenses" awarded for the second accident. The record indicates that Mr. Tietjen only evaluated the plaintiff for litigation purposes on two occasions and did not perform any treatment. In fact, Mr. Tietjen testified that he did not treat the plaintiff, that he had to have a doctor's order to treat a patient, and that he was unaware of any doctor referring the plaintiff to him for physical therapy. See Morris v. Highlands Insurance Company, 525 So.2d 125 (La.App.3d Cir.1988).
Also included in the other medical expenses were charges of $174.30 for the plaintiff's visit to the Willis-Knighton South emergency room and $70 for Dr. Waddell's services in connection with a knee sprain caused by a dancing mishap in 1988. It further contests a $50 charge for a medical report from Dr. Waddell which was supposedly included in the other medical expenses.
The evidence does not demonstrate that the charges from the dancing incident are properly imputable to the defendant. Thus, it was error to include them. However, as to the medical report expense, our *481 computations fail to demonstrate that this expense was included in the amount awarded.

CONCLUSION
Based on the foregoing, we increase the plaintiff's allocation of fault from 50 percent to 70 percent. Additionally, we amend the trial court judgment for damages for the second accident by deleting the amount of $5,000 for loss of future earning capacity, as well as the Willis-Knighton South bill of $174.30 and Dr. Waddell's charge of $70. Accordingly, for the second accident, plaintiff is entitled to recovery of the following amounts:

All other medical expenses $ 6,206.43
Pain, suffering, and future disability 65,000.00
Past lost wages 6,916.00
 __________
 $78,122.43
Less 70 percent of total $23,436.73

In all other respects, the trial court judgment is affirmed. The judgment, as amended, is affirmed, at plaintiff's costs.
AMENDED, AND, AS AMENDED, AFFIRMED.