663 So.2d 366 (1995)
Cynthia IORIO and Angelo Iorio, Plaintiffs-Appellants,
v.
Tate GROSSIE, et al., Defendants-Appellees.
No. 94-846.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
*368 James Steven Gates, Opelousas, for Cynthia Iorio et vir.
John William Penny Jr., Lafayette, for Tate H. Grossie et al.
Marc Damon Moroux, Lafayette, for American Manufactures Mutual Insurance Co.
Before LABORDE,[*] THIBODEAUX, SAUNDERS, WOODARD and AMY, JJ.
WOODARD, Judge.
This appeal arises from an action to recover damages for injuries sustained in an automobile accident.

FACTS
On January 29, 1990, Cynthia Iorio was injured in an automobile accident caused by Tate Grossie. Subsequently, Ms. Iorio and her husband, Angelo Iorio, instituted the present personal injury lawsuit against Mr. Grossie, his insurer, and American Manufacturer's Mutual Insurance Company (AMMIC), Ms. Iorio's uninsured motorist insurance carrier. Mr. Grossie and his insurer settled out of court, and the Iorios continued to pursue their claim against AMMIC.
At trial on October 21-22, 1993, the parties' expert medical witnesses disagreed as to whether Ms. Iorio continued to suffer from injuries to her neck, back, wrist, and knee, and if so, whether they were caused by the accident. The jury rendered a verdict in favor of Ms. Iorio in the following amounts:

Past loss of wages ...........$ 2,000
Future medical expenses ............ 0
Past medical expenses ..........16,600
Pain, suffering & disability
 (past, present, & future) .....8,500
TOTAL: .......................$ 27,100

The jury also awarded Mr. Iorio $500 for loss of consortium. The trial court then dismissed the Iorios' lawsuit because they recovered less than $47,000, the amount that AMMIC had previously advanced to them. The Iorios now appeal, asserting that they were awarded insufficient damages as a result of the trial court's failure to charge the jury properly.

LAW

I. ADEQUACY OF THE JURY INSTRUCTION
Ms. Iorio assigns as error the trial court's refusal to grant her timely request to instruct the jury that the testimony of a patient's treating physician should ordinarily be afforded more weight than that of an examining physician. Instead of giving the requested charge, the court stated:
You should consider each expert opinion received into evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel it is outweighed by the evidence, you may disregard the opinion entirely.
A trial court should give all requested instructions that correctly state the law, provided that they are material and relevant to the litigation. Lincecum v. Missouri Pacific R. Co., 452 So.2d 1182 (La.App. 1 Cir.), writ denied, 458 So.2d 476 (La.1984). Courts are not obligated to give the specific jury instructions submitted by the parties, Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3 Cir.1991), but omission of a requested instruction containing an essential legal principal may constitute reversible error, Evangeline Farmers Co-op. v. Fontenot, 565 So.2d 1040 (La.App. 3 Cir.1990). A court has fulfilled its duty if its instructions fairly and reasonably point out the issues presented by the pleadings and evidence and provide the principles of law necessary to resolve those issues. Crooks v. National Union Fire Ins. Co., 620 So.2d 421 (La.App. 3 Cir.), writs denied, 629 So.2d 391, 392 (La.1993).
*369 An appellate court must exercise great restraint before overturning a jury verdict on the basis of erroneous instructions. Creel v. S.A. Tarver & Son Tractor Co., 537 So.2d 752 (La.App. 3 Cir.1988). Consequently, we will overturn the jury's verdict in the case sub judice on the basis of such an error only if the instructions, taken as a whole, were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the relevant law and facts. Laborde v. Velsicol Chem. Corp., 474 So.2d 1320 (La. App. 3 Cir.1985), writ denied, 480 So.2d 738 (La.1986). Ultimately, the pertinent inquiry is whether the jury was misled to such an extent as to be prevented from doing justice. Creel, 537 So.2d 752.
Ms. Iorio's requested instruction is an accurate statement of the law. See Nugent v. Continental Casualty Co., 93-867 (La.App. 3 Cir.1994), 634 So.2d 406. This principle is material and relevant to the case because it is useful to the resolution of the disagreement between the parties' expert medical witnesses, upon which the outcome of the case hinges. Thus, the trial court erred in refusing to give the instruction. Instead, the trial court instructed the jury that they were free to assign as much weight to the testimony of AMMIC's examining physician as to that of the treating physicians, which not only fails to convey the principle of law that Ms. Iorio sought to introduce, but actually undermines it.
Moreover, it is apparent from the jury's verdict that they afforded far more weight than was appropriate to the testimony of AMMIC's examining physician, Dr. James McDaniel. Dr. McDaniel provided the only medical evidence contradicting the testimonies of Ms. Iorio and her treating physicians, which established the existence of her injuries and their causal relationship to the accident. He examined Ms. Iorio one time, two years after the accident, for 15-30 minutes and for the sole purpose of evaluating her to aid the defense. In reaching their verdict, although awarding some damages, the jury apparently discounted, not one but, all three of Ms. Iorio's long term treating physicians' testimonies regarding the severity, duration, and causation of her injuries in favor of Dr. McDaniel's testimony, despite the brevity of his examination and the fact that the treating physicians' opinions regarding her injuries were more time-relevant and substantiated by objective tests, such as the MRI and Phalen's, Tinel's, and pinwheel tests.
We are especially concerned about the jury's deference to Dr. McDaniel, in light of his obvious bias against litigants in general and personal injury plaintiffs with soft tissue injuries, in particular, such as those Ms. Iorio has suffered. Dr. McDaniel's editorial comments while testifying imply that only those who have their legs cut off or need back surgery, and the like, have legitimate injuries. Comments such as these, implying that soft tissue injuries are not legitimate injuries, indicate that Dr. McDaniel is predisposed to dismiss them or, perhaps, any injury short of amputation, as mere "bellyaching," or even deliberate falsification of symptoms. His expression of his views does not appear to be "of no moment," but rather entrenched and pervasive in his thinking and analysis, as he has displayed a pattern of such bias in other cases before this court:
This court is well aware of Dr. McDaniel's reputation for testimony that often crosses the border into advocacy. See, Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La. App. 3 Cir.1993). By his testimony in the record before us, we see it is a reputation well-deserved. Nugent, 634 So.2d 406; and, Dr. McDaniel's sweeping denouncement of pain clinics for the treatment of people like Mr. Chevalier appears to be founded on a general belief that no credence can be given to the complaints of parties involved in litigation because of what he characterized as their "secondary gain motives." While he claimed that many others in the medical community share his beliefs, he cited no studies or empirical data indicating that his beliefs are based on accepted scientific principles rather than a general bias against litigants. Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3 Cir.1993).
Dr. McDaniel's lack of objectivity and the court's failure to give the aforementioned instruction, which could have enabled the jury to place his testimony in proper perspective, *370 were particularly prejudicial to the Iorios and had the inadvertent effect of "stacking the deck" against them, depriving them of a meaningful and fair trial. Accordingly, the trial court committed reversible error in doing so. As the record before us is complete, we will undertake a de novo review of the evidence and implement our own judgment. Gunn v. Amica Mut. Ins. Co., 611 So.2d 805 (La.App. 3 Cir.1992).

II. MS. IORIO'S DAMAGES
Ms. Iorio alleges that she has suffered from injuries to her neck, back, knee, and wrist. Dr. Kenneth Laborde, a specialist in hand surgery, testified that she suffered from carpal tunnel syndrome (CTS), which he was able to relieve by operating on her wrist. He attributed this injury to the accident. Dr. Louis Blanda, an orthopedic surgeon, stated that Ms. Iorio suffers from a bulging cervical disc, reversal of the cervical spine, and a moderate strain in the ligaments of her neck, for which he assigned her a 5-10% total permanent physical disability. Dr. Blanda further opined that she suffered an injury to her knee, which was resolved at the time of trial, and that all of her injuries were caused by the accident. Dr. James Morvant, a chiropractor, confirmed the reversal of the cervical spine and bulging cervical disc and agreed that these injuries resulted from the accident. He also detected muscle spasms, an objective finding, in her lower back.
Dr. McDaniel disputed Dr. Blanda's assessment of partial disability, testifying that Ms. Iorio did not exhibit a significantly bulging spinal disc, reversed spine, or any other indication of an ongoing injury. He also noted that x-rays and tests of her neck and back yielded normal results. He disputed Dr. Laborde's diagnosis of CTS, which he asserted could not have been caused by the accident. He offered no opinion as to the knee injury, of which no trace remains, but noted the absence of indicia of lower back problems.
We find Dr. McDaniel's testimony worthless due to his admitted bias and his one time, brief examination of Ms. Iorio, approximately 2 years after the injuries occurred. Objective evidence, such as the Phalen's, Tinel's, & pinwheel tests, supported Dr. Laborde's diagnosis of CTS, and an MRI supported Dr. Blanda's opinion that Ms. Iorio is suffering from a bulging disc. Dr. McDaniel's opinion regarding the bulging cervical disc, 5-10% permanent disability and reversal of the spine is outweighed by the testimonies of two treating physicians, Drs. Blanda and Morvant. Similarly, Dr. McDaniel's opinion regarding the CTS is outweighed by those of Drs. Blanda and Dr. Laborde. Dr. Blanda disagreed with Dr. Morvant's diagnosis of a significant lower back injury, and no other medical evidence supports Ms. Iorio's claim in this respect. However, no evidence contradicts her contention that she suffered from a knee injury lasting several months. Thus, the preponderance of the evidence favors the finding that Ms. Iorio suffers from injuries to her neck and that she has suffered from CTS and a knee injury, but not that she suffers from a significant lower back injury.
A plaintiff in a personal injury lawsuit must prove causation by a preponderance of the evidence. Dabog v. Deris, 625 So.2d 492 (La.1993). The plaintiff is aided in this endeavor by the legal presumption that a medical condition producing a disability resulted from a preceding accident if: (1) the injured person was in good health prior to the accident; (2) the disabling condition manifested itself shortly after the accident; and (3) medical evidence indicates that there is a reasonable possibility of a causal connection between the accident and the disabling condition. Id.
Ms. Iorio and her husband testified that she was active and in good health prior to the accident. Injuries to her neck, knee, and wrist manifested within a short time afterwards, and the testimonies of Drs. Laborde, Blanda, and Morvant clearly establish that it is more probable than not that these injuries were caused by the accident. Consequently, Ms. Iorio is entitled to the benefit of the presumption of causation.
In order to overcome the legal presumption of causation, a defendant who contests the cause-in-fact relationship must show some other particular incident that could have caused the injury in question. Sudduth *371 v. DOTD, 619 So.2d 618 (La.App. 3 Cir.), writ denied, 629 So.2d 349 (La.1993). Contrary to Dr. Laborde's opinion, Dr. McDaniel stated that her CTS could not have been caused by the accident because her symptoms were incompatible with CTS, and CTS cannot be caused by traumatic accidents. Dr. McDaniel identified Ms. Iorio's career as a secretary as a possible cause of her CTS, but this is mere speculation and insufficient to overcome the legal presumption of causation. AMMIC has presented no evidence suggesting any specific alternative causes of her other injuries. Accordingly, we hold that her CTS and neck and knee injuries were caused by the accident.

A. Past Medical Expenses
Ms. Iorio claimed past medical expenses of $22,025.21. These included chiropractic fees of $5,439.50, which the jury denied. Dr. Morvant testified to the propriety of this treatment, and Ms. Iorio testified that it had significantly helped her, but Dr. McDaniel responded that it was useless and capable of harming Ms. Iorio. Thus, AMMIC argued that Ms. Iorio could not recover for her chiropractic expenses because this treatment did not aid in her rehabilitation.
A tortfeasor is liable for any overtreatment or unnecessary treatment provided to his victim, including chiropractic care, unless the victim incurred the expense in bad faith. Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2 Cir.1992). In Starnes, the Second Circuit held that the plaintiff did not incur charges for chiropractic treatment in bad faith, even though he consulted a chiropractor without directions to do so from his treating physician. Id. In the case sub judice, by contrast, Dr. Blanda, Ms. Iorio's treating physician, recommended that Ms. Iorio consult Dr. Morvant. A fortiori, she did not act in bad faith by consulting Dr. Morvant, regardless of Dr. McDaniel's opinion as to the propriety of this treatment. Thus, she is entitled to compensation for those medical expenses. We award a total of $22,025.21.

B. Future Medical Expenses
An award for future medical expenses is proper if the plaintiff is able to establish through medical testimony the necessity for such expenses. Pitre v. Government Employees Ins. Co., 596 So.2d 256 (La. App. 3 Cir.), writ denied, 600 So.2d 685 (La.1992). In the case sub judice, Dr. Morvant testified that Ms. Iorio must be treated once per week for 3-4 additional months at $25 per visit in order to revive the elasticity and stability of the ligaments in her neck. He further stated that she would need similar treatment thereafter at least once per month for another eight months. AMMIC countered with Dr. McDaniel's testimony that such treatment is unnecessary and possibly harmful. Ms. Iorio testified that her neck is growing increasingly painful, but noted that Dr. Morvant's treatment temporarily alleviates her pain.
Given Dr. McDaniel's lack of credibility in this case, his testimony is clearly outweighed by that of Dr. Morvant, Ms. Iorio's treating chiropractor. Dr. Blanda's opinion that she has a permanent disability and a bulging cervical disc, and the MRI that he interpreted as objective evidence corroborating these opinions, further support Ms. Iorio's assertion that she will require chiropractic treatment in the future. Consequently, we award her $600 for this treatment.

C. Lost Wages
Ms. Iorio claims to have lost wages totaling $4,010.57 as a result of her CTS. She testified that she missed 3 weeks of work during her recovery from surgery to alleviate the CTS, on several occasions afterwards in order to obtain chiropractic treatment, and when her pain became too severe to continue working.
A plaintiff must prove by a preponderance of the evidence the existence of damages allegedly caused by the tortfeasor's fault. ANMAC Foundation, Inc. v. St. Patrick Hospital, 594 So.2d 951 (La.App. 3 Cir. 1992). Although the only evidence that Ms. Iorio has presented regarding lost wages is her own testimony, memorialized in the timesheets she maintained as a record of her *372 absences from work, it is well established that a plaintiff's uncorroborated testimony is sufficient to prove lost wages, as long as such proof is uncontradicted and reasonably establishes her claim. Richard v. Teague, 92-17 (La.App. 3 Cir. 5/4/94), 636 So.2d 1160, writ denied, 644 So.2d 388 (La. 11/11/94). AMMIC has not contradicted her claim that she missed work because of the operation to alleviate her CTS, the chiropractic treatment, and pain. Therefore, aided by the unrebutted presumption that her injuries were caused by the accident, Ms. Iorio has proved that she is entitled to lost wages of $4,010.57.

D. General Damages
The primary considerations in assessing damages are the severity and duration of the injured party's pain and suffering. Andres v. Liberty Mutual Ins. Co., 568 So.2d 651 (La.App. 3 Cir.1990). Ms. Iorio has suffered for three years through several different injuries and subsequent periods of convalescence. She testified to significant pain in her knee for several months until the injury was resolved. She also stated that her CTS and the subsequent corrective surgery caused her to suffer great pain. Her right hand was in a cast for three weeks after the corrective surgery, limiting her ability. Although the operation largely ended the wrist pain, her hand is now weaker and fatigues more easily than prior to the accident. The mother of two small boys, Ms. Iorio's injuries prevented her from picking up or dressing the children, as well as cooking or performing other housework. She continues to experience increasingly severe neck pain, especially when she engages in bending, lifting, or other physical exertion. As a result, she is unable to participate in many of the activities that she enjoyed prior to the accident, such as gardening and playing with her children. Additionally, the typing and bending activity entailed by her work as a secretary renders the residual effects of the injuries very noticeable on a daily basis.
The medical evidence and testimony discussed above corroborates Ms. Iorio's testimony to pain and suffering as a result of knee, neck, and wrist injuries. She has a 5-10% permanent physical disability in her neck, and she will continue to suffer from neck pain in the future. She is a young woman, only 30 years old at the time of the accident, whose physical activities have been curtailed abruptly by pain and fear of aggravating her injuries.
Upon review of previous awards for similar injuries, we conclude that $45,000 is a reasonable award for Ms. Iorio's general damages. Nugent, 634 So.2d 406; Horn v. City of Lafayette, 578 So.2d 232 (La.App. 3 Cir.), writs denied, 584 So.2d 1165, 1167 (La.1991); Ferguson v. Village of Dry Prong, 580 So.2d 1015 (La.App. 3 Cir.), writ denied, 585 So.2d 570 (La.1991).

III. MR. IORIO'S DAMAGES FOR LOSS OF CONSORTIUM
Loss of consortium includes loss of services, love, companionship, affection, society, sexual relations, and solace. Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3 Cir.), writ denied, 565 So.2d 450 (La.1990). The Iorios have not physically or judicially separated, but Ms. Iorio's partial inability to help herself or her family has placed strain on the marriage, as would be expected. Mr. Iorio testified that Ms. Iorio's pain and their fear of aggravating her injuries have significantly inhibited their intimate relations and other activities together. Mr. Iorio also stated that, until the wrist operation, he had to perform many of the functions that his wife had fulfilled prior to the accident, such as cooking, cleaning, and caring for their two young children. Ms. Iorio's pain renders her irritable and more likely to lash out than before the accident, and Mr. Iorio continues to perform household duties involving bending or other significant exertion.
In light of this testimony and the medical evidence discussed above, we conclude that $5,000 will adequately compensate Mr. Iorio's loss of consortium. See Nugent, 634 So.2d 406; Smith v. Winn-Dixie of La., Inc., 574 So.2d 514 (La.App. 3 Cir.1991); Montgomery v. Opelousas Gen'l Hospital, 546 So.2d 621 (La.App. 3 Cir.1989); Fuller v. Moser, 539 So.2d 784 (La.App. 3 Cir.1989); Clouatre v. Liberty Mutual Ins. Co., 557 So.2d 696 (La. App. 5 Cir.1989).

*373 CONCLUSION
For the foregoing reasons, we reverse and set aside the judgment of the trial court and render judgment in favor of Cynthia Iorio in the total amount of $71,535.78 and in favor of Angelo Iorio in the amount of $5,000, with legal interest from the date of judicial demand. Costs of this appeal are assessed against appellees.
REVERSED AND RENDERED.
AMY, J., dissents.
NOTES
[*] Judge P.J. Laborde, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.