671 So.2d 1041 (1996)
Michelle Lee FRANCIS, Plaintiff-Appellant,
v.
Mona G. BROWN et al., Defendants-Appellees.
No. 95-1241.
Court of Appeal of Louisiana, Third Circuit.
March 20, 1996.
*1043 Bennett Boyd Anderson Jr., Lafayette, for Michelle Lee Francis.
Patrick J. Briney, Lafayette, for Mona G. Brown et al.
Before COOKS, DECUIR and GREMILLION, JJ.
GREMILLION, Judge.
In this appeal, plaintiff, Michelle Lee Francis, claims a jury award to her for injuries received in an automobile accident is unreasonable low and manifestly erroneous. After reviewing the record, we reverse the finding of the jury with regards to damages and render a judgment on this issue.

PROCEDURE
On December 19, 1990, Francis was injured when her car was struck from behind by a van driven by Mona Brown. On October 16, 1991, she brought suit against Brown and her insurer, American Manufacturers Mutual Insurance Company. Prior to trial, Francis' Motion for Summary Judgment was *1044 granted finding Brown at fault. A trial on the issue of damages was held from April 18 through April 20, 1995. The jury returned a verdict in favor of Francis awarding damages of $5,500 for past medical expenses, $3,500 for past lost wages, and $1,000 for past, present, and future pain and suffering, both physical and mental. From this verdict, Francis appeals asserting the following assignments of error:
1. The jury's total award of special damages in the amount of $9,000.00 is manifestly erroneous.
2. The jury's total award of general damages of $1,000.00 is manifestly erroneous.
3. The trial court erred in failing to instruct the jury on the proper weight to give to opinions of a treating physician versus a physician who makes a one-time evaluation for purposes of trial.
4. The trial court erred in failing to exclude collateral source information (guarantee and/or payment by plaintiff's attorney of plaintiff's medical expenses).

FACTS
Francis went to the emergency room the day after the accident complaining of cramps in her neck which were diagnosed as cervical muscle strain. A week later, she began complaining of pain in her right shoulder. On January 14, 1991, Francis saw Dr. Thomas Callender who diagnosed a cervical strain and right shoulder and leg strain. She was not allowed to return to work on his orders and was to return for an appointment with him in two weeks. Dr. Callender also recommended that she see an orthopedic surgeon. On February 6, 1991, Dr. Callender saw Francis again and made a similar diagnosis and recommended physical therapy. On February 26, 1991, Francis was examined by an orthopedic surgeon, Dr. Clifton Shepherd. He diagnosed Francis as having tenderness and muscle spasms on both sides of the neck; tenderness and limited motion in the front and top part of the shoulder; and a strain in the middle back. On April 16, 1991, Dr. Shepherd noted a clicking in the right shoulder. On June 21, 1991, an MRI and bone scan were read by the radiologist as normal; however, Dr. Shepherd noted some slight abnormal activity in the right shoulder as compared to the left. He surmised that she was developing an impingement syndrome and suggested surgery to relieve the impingement. Surgery was performed on the right shoulder on August 21, 1991. During the surgery, the coracoacromial ligament was found to be putting considerable pressure on the rotator cuff and was removed. A couple of days after the surgery, Francis reported to Dr. Shepherd that the deep pain in her shoulder was beginning to subside. A couple of months later, she complained that she experienced pain that was associated with overhead use and Dr. Shepherd opined that she had a 5% to 10% impairment.
Francis saw Dr. Stuart Phillips on November 17, 1992 for a second opinion because she was still feeling some pain in her right shoulder. Dr. Phillips determined that the procedure used by Dr. Shepherd, the Neer decompression, relieved most of the pain, but it did not eliminate all of the pain in her shoulder. He reported that she had an abnormal examination in her neck: a loss of about 50% of motion in her neck; tenderness in the muscles accompanied with muscle spasms; weakness in the grasp of her right arm and a decreased sensation over the thumb part of the right arm signifying a C-5 dermatome; and a loss of abduction of the right shoulder of about 10 degrees. After an MRI, CAT scan, and thermogram he made the determination that she would not regain a full range of motion in her right shoulder and fixed her degree of impairment at twenty-five percent of the shoulder and fifteen percent of the entire arm, corresponding to a twenty-five percent loss of total function.
Dr. James McDaniel, at defendant's request, conducted an independent medical examination of Francis on October 10, 1993. As a result of this examination and his review of plaintiff's medical records, he opined that there was no objective evidence of either neck or back pain. He also disputed the claim that her shoulder disability could have been caused by the automobile accident, stating that this type of injury is usually associated with a repetitive motion and exercise *1045 such as throwing a ball. He testified that he had never heard of nor read about anyone developing that injury from a single blow to the shoulder; rather, he stated if, in fact, she had a shoulder injury, it was probably caused by playing softball, something Francis had engaged in some two years before the accident. Finally, he disparaged Dr. Phillips' professionalism claiming, "[t]he only thing I've ever learned from Dr. Phillips is how not to practice orthopedics."
Before the accident, Francis had no problems with her shoulder. It was only afterwards that pain in her shoulder began to manifest itself. There was no evidence that she in anyway further injured herself after the accident until she made her first complaint to Dr. Callender on January 14, 1991. The physicians who treated Francis do not appear skeptical about her complaints. Her doctors attended her for several months treating her for pain. Dr. Shepherd suggested surgery only after trying physical therapy and conservative treatment with no appreciable relief of her pain. After surgery, her pain began to diminish.

ASSIGNMENT OF ERROR NUMBER 3
We shall consider Assignments of Error 3 and 4 before considering Assignments of Error 1 and 2. Generally, the testimony of the treating physician is entitled to more weight than the testimony of a physician who examines a plaintiff for diagnosis. Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3 Cir.1993). Likewise, the testimony of an attending physician should be accorded more weight and probative value than that of a physician who has made an examination solely for the purpose of giving expert testimony regarding a patient's condition. Hunter v. Kroger Company, 600 So.2d 837 (La.App. 3 Cir.1992); Lougon v. Era Avaition, Inc. 609 So.2d 330 (La.App. 3 Cir.1992). An alternative cause must be more than mere speculation in order to defeat a recovery of damages. Dabog v. Deris, 625 So.2d 492 (La.1993). Defendant takes her victim as she finds her and is responsible for all damages resulting from her tortious conduct. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993).
This court recently visited the issue of jury instructions regarding the opinion of a treating physician's testimony versus that of an examining physician. In Iorio v. Grossie, 94-846, p. 2 (La.App. 3 Cir. 10/4/95); 663 So.2d 366, 368, this court stated:
A trial court should give all requested instructions that correctly state the law, provided that they are material and relevant to the litigation. Lincecum v. Missouri Pacific R. Co., 452 So.2d 1182 (La. App. 1 Cir.), writ denied, 458 So.2d 476 (La.1984). Courts are not obligated to give the specific jury instructions submitted by the parties, Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3 Cir.1991), but omission of a requested instruction containing an essential legal principal may constitute reversible error, Evangeline Farmers Co-op. v. Fontenot, 565 So.2d 1040 (La.App. 3 Cir.1990). A court has fulfilled its duty if its instructions fairly and reasonably point out the issues presented by the pleadings and evidence and provide the principles of law necessary to resolve those issues. Crooks v. National Union Fire Ins. Co., 620 So.2d 421 (La. App. 3 Cir.), writs denied, 629 So.2d 391, 392 (La.1993).
An appellate court must exercise great restraint before overturning a jury verdict on the basis of erroneous instructions. Creel v. S.A. Tarver & Son Tractor Co., 537 So.2d 752 (La.App. 3 Cir.1988). Consequently, we will overturn the jury's verdict in the case sub judice on the basis of such an error only if the instructions, taken as a whole, were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the relevant law and facts. Laborde v. Velsicol Chem. Corp., 474 So.2d 1320 (La.App. 3 Cir.1985), writ denied, 480 So.2d 738 (La.1986). Ultimately, the pertinent inquiry is whether the jury was misled to such an extent as to be prevented from doing justice. Creel, 537 So.2d 752.
At trial, Francis requested the following jury charge:
The testimony of an attending physician should be accorded more weight and probative value than that of a physician who *1046 has made an examination solely for the purpose of giving expert testimony regarding plaintiff's condition.
In other words, in this case, the testimony of Drs. Shepherd and Phillips should be given greater weight than the testimony of Dr. McDaniel, who examined Michelle only once in preparation for litigation.
The trial court gave the following instruction to the jury:
Generally the testimony of a treating physician is entitled to more weight than that of an equally qualified physician whose opinion is based only upon examination of records, reports or other documents.
The charge requested by Francis was a proper statement of the law, particularly in the light of the facts of the case and Dr. McDaniel's reputation and history of obvious bias against litigants and personal injury plaintiffs.[1] The requested charge "is material and relevant to the case because it is useful to the resolution of the disagreement between the parties' expert medical witnesses, upon which the outcome of the case hinges." Iorio, 663 So.2d at 369. The jury charge given by the trial court was flawed, and thus, the trial court committed error in giving it. It did not fairly and reasonably point out the issues presented by the evidence or the pleadings. There was no testimony in this trial from a physician whose opinion was based solely upon an examination of records, reports, and other documents. In this case, Dr. McDaniel did more than just examine the records, reports, and other documents; he physically examined Francis. Since Dr. McDaniel actually examined Francis, it is apparent that this jury charge impliedly led the jury to give the testimony of Dr. McDaniel equal or even greater weight than that of Dr. Shepherd. By giving the instruction, the trial court not only failed to convey to the jury the principal of law Francis intended to introduce, but actually undermined her intention. Dr. McDaniel was not engaged by defendant to examine Francis for the purpose of diagnosing her condition and rendering treatment to aid in her recovery. He was, in fact, hired as an expert witness to evaluate her as well as her treating physicians and to testify on behalf of defendant at the trial. It is patently unfair to allow the jury to equate his testimony with that of Francis' treating physicians.

ASSIGNMENT OF ERROR NUMBER 4
Francis contends that the trial court erred in failing to exclude collateral source information. "The `collateral source' rule means that the tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." Kidder v. Boudreaux, 93-859 (La. App. 3 Cir. 5/19/94); 636 So.2d 282, 284. La.Code Evid. art. 409 provides the following:
In a civil case, evidence of furnishing or offering or promising to pay expenses or losses occasioned by an injury to person or damage to property is not admissible to prove liability for the injury or damage nor is it admissible to mitigate, reduce, or avoid liability therefor. This Article does not require the exclusion of such evidence when it is offered solely for another purpose, such as to enforce a contract for payment.
Prior to the trial, Francis filed and was granted a motion in limine prohibiting any reference to or questions concerning the payment *1047 or guarantee of payment of her medical expenses by her attorney. However, during the trial the following exchange occurred while Francis was being cross-examined by counsel for the defendant:
BY MR. BRINEY:
Q You never did go to see Dr. Boustany after this accident for medical treatment, did you?
A I went to try to go see him but I couldn't see him.
Q Why was that?
BY MR. ANDERSON:
Objection, Your Honor. I object. Request to approach the bench.
(COUNSEL APPROACHED THE BENCH)
BY MR. ANDERSON:
I object your honor, based upon the matters discussed at pre-trial.
BY THE COURT:
Thank you. I will overrule the same. I think that this is within the appropriate parameters of cross examination with respect to the case now in hearing and will permit it to go forward.
BY MR. BRINEY:
Q Why didn't you go see your family doctor as recommended by the emergency room the day after the accident?
A I went in to see my family doctor, and the nurse said they couldn't see me because I didn't have medical insurance. And she said in order for them to see me from an accident, she said I'd have to be referred by an attorney.
Q Okay, so you didn't go see Dr. Boustany.
A No, I didn't.
Q You did go see Dr. Callender, though, didn't you?
A Yes, I did.
Q And you went to Dr. Callender because you were referred by an attorney, Mr. Anderson. Isn't that right.
A Yes, sir.
* * * * * *
Q Did you have the money to pay for this emergency room visit?
A No, I did not.
BY MR. ANDERSON:
I object, Your Honor. Just a second, please, Counsel.
BY THE COURT:
At side bar, please, Gentlemen.
(SIDE BAR CONFERENCE HELD)
BY MR. ANDERSON:
For the record, Your Honor, I maintain my objections to this line of questioning for the reasons I pointed out.
BY THE COURT:
Okay. I will overrule the objection. I think it's within the parameters of proper cross examination, understanding you will not step over the line of the pre-trial ruling.
BY MR. BRINEY:
Q Now when I asked you about these medical bills earlier, you told me that you had arrived at Dr. Callender's office on January the Fourteenth (14th) with a check for Five Hundred dollars ($500.00). Is that correct?
A Yes, sir.
Clearly, this exchange violated the "collateral source" rule. A tortfeasor may not benefit because plaintiff benefitted from an independent source. La.Code Evid. art. 409 prevents introduction of such evidence. To allow a jury to consider such evidence can only lead to unjust results. If a jury could consider the occasion where a defendant makes certain payments to a plaintiff, it could be misconstrued that the defendant made an admission of liability. To allow a jury to hear evidence that plaintiff's attorney provided the funds for her medical expenses only fanned the flames of the prejudice that now exists against civil litigants and their attorneys. A jury should not be guided by bias, prejudice, passion, or sympathy, but should coolly and dispassionately weigh the facts and the law to reach a just and proper verdict. Unfortunately, this jury was guided by the unchecked bias of Dr. McDaniel and the prejudice sowed by defense counsel's inappropriate *1048 and objectional references to payments made by plaintiff's attorney of her medical expenses. Thus, the scales of justice were tipped in favor of the passion of the heart and against the cool reason of common sense.

ASSIGNMENTS OF ERROR NUMBER 1 & 2
Francis asserts in her first two assignments of error that the trial court was manifestly erroneous in its award of $9,000 in special damages and $1,000 in general damages. A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La.1987); Rosell, 549 So.2d 840; Stobart, 617 So.2d 880. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, 549 So.2d 840; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Stobart, 617 So.2d 880. However, when a trier of fact's determination is derived by overlooking an applicable legal principle, an appellate court is not bound to accept that determination. Mart, 505 So.2d 1120. A claimant in a personal injury suit must prove causation by a preponderance of the evidence. Morris v. Orleans Parish School Bd., 553 So.2d 427 (La.1989). Additionally,
[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977).
Having found the trial court committed reversible error, we therefore find the jury committed manifest error or they were clearly wrong on the amount of damages awarded Francis. Since the record before us is complete, we will undertake a de novo review of the evidence and implement our own judgment. Gunn v. Amica Mut. Ins. Co., 611 So.2d 805 (La.App. 3 Cir.1992), writ denied, 613 So.2d 999 (La.1993).

DAMAGES
Francis alleges she suffered injuries to her neck, back, and shoulder. Her first medical treatment was the day after the accident at Our Lady of Lourdes Hospital emergency room. Conservative treatment was prescribed and she was instructed to see her family doctor. From the initial diagnosis of a cervical strain, she began to experience a pain in her right shoulder. On January 14, 1991, she saw Dr. Callender who diagnosed a cervical strain and right shoulder and right leg strain, prescribed her certain medication, and instructed her not to return to work for two weeks. She returned to see Dr. Callender on February 6, 1991. He again diagnosed the same problems and recommended physical therapy. On February 26, 1991, Francis was examined by Dr. Shepherd, an orthopedic surgeon. He diagnosed similar conditions as did Dr. Callender, primarily with her neck, back, and right shoulder. He temporarily disabled Francis and prescribed medication and bed rest. She continued physical therapy and remained under Dr. Shepherd's care, being treated conservatively until he operated on her shoulder on August 21, 1991. The surgical procedure was successful in relieving a considerable amount of the pain, but left her with some pain especially when she worked on overhead activities. The surgery left her with a 15% impairment of her right arm and with a permanent restriction that she not engage in excessive overhead activities. She returned to work on March 20, 1992, as a hairdresser at a considerable increase in pay. Francis should not suffer any further problems with her back *1049 and neck; however, she will have intermittent discomfort with her shoulder during her career as a hairdresser.
A plaintiff in a personal injury lawsuit must prove causation by a preponderance of the evidence. Dabog, 625 So.2d 492. The plaintiff is aided in that endeavor by the legal presumption that a medical condition producing a disability resulted from a preceding accident if: (1) the injured person was in good health prior to the accident; (2) the disabling condition manifested itself shortly after the accident; and (3) medical evidence indicated that there is a reasonable possibility of a causal connection between the accident and the disabling condition. Id. In order to overcome the legal presumption of causation, a defendant who contests the cause-in-fact relationship must show some other particular incident that could have caused the injury in question. Sudduth v. DOTD, 619 So.2d 618 (La.App. 3 Cir.), writ denied, 629 So.2d 349 (La.1993).
The only evidence that Francis injured her shoulder in another particular incident was Dr. McDaniel's suggestion that she injured the shoulder playing softball. There was no evidence to suggest that Francis had played softball in the two years preceding the accident. In fact, she had never had a problem with her shoulder until she was involved in the December 19, 1990 accident. We find Dr. McDaniel's testimony to be of little value in this case, primarily because of his predisposition to plaintiff bias and the fact that he saw Francis for less than 30 minutes two and one-years after the accident for the purpose of giving expert medical testimony. We find that the preponderance of the evidence favors Francis' contention that she injured her shoulder in the accident with Brown, and is, therefore, entitled to all damages that flow from that injury.
At the time of the accident, she was working as a floral assistant at a weekly wage of $130 per week. She was unable to work for 66 weeks as a result of the accident and is entitled to an award of $8,580 ($130 × 66 weeks).
Francis has documented medical bills in the sum of $19,150.77 as a result of the accident. There is little dispute that these bills were a direct result of Francis' back, neck, or shoulder injury. Certainly, Brown is liable for all medical expenses associated with those injuries. Therefore, Francis is entitled to past medical expenses in the amount of $19,150.77.
Finally, the jury award of $1,000 for pain and suffering is clearly wrong. Francis suffered back, neck, leg, and shoulder pain for several months. She submitted to physical therapy and, subsequently, surgery to relieve the pain. Even with a good result from surgery she will live with intermittent pain in her shoulder and a 15% disability of her right arm as a result of the accident. The primary considerations in assessing damages are the severity and duration of the injured person's pain and suffering. Andres v. Liberty Mutual Ins. Co., 568 So.2d 651 (La.App. 3 Cir.1990). After reviewing previous awards in similar cases, we conclude Francis is entitled to an award for her general damages in the amount of $60,000.

CONCLUSION
For the foregoing reasons, we reverse and set aside the verdict of the jury and render judgment in favor of Michelle Lee Francis and against the defendants, Mona G. Brown and American Manufacturers Mutual Insurance Company, in the full amount of $87,730.77, with legal interest from the date of judicial demand and for all cost of these proceedings.
REVERSED AND RENDERED.
NOTES
[1] We are well aware of Dr. McDaniel's well deserved reputation for testimony that crosses the line into advocacy. In Iorio, 663 So.2d 366, a case strikingly similar to the case sub judice, this court discussed Dr. McDaniel's propensity as a witness:

"We are especially concerned about the jury's deference to Dr. McDaniel, in light of his obvious bias against litigants in general and personal injury plaintiffs with soft tissue injuries, in particular, ... Dr. McDaniel's editorial comments while testifying imply that only those who have their legs cut off or need back surgery, and the like, have legitimate injuries, indicate that Dr. McDaniel is predisposed to dismiss them or, perhaps, any injury short of amputation, as mere "bellyaching," or even deliberate falsification of symptoms. His expression of his views does not appear to be "of the moment," but rather entrenched and pervasive in his thinking and analysis, as he has displayed a pattern of such bias in other cases before this court ..." Id at 369.