GRISBAUM, Judge.
This is a personal injury matter in which the plaintiff was awarded $384,487.63 in damages for injuries sustained as the result of an on-the-job automobile accident. The trial took place before Judge Lionel R. Collins, who died before rendering judgment. Accordingly, pursuant to La.R.S. 13:4209, along with joint stipulations of all parties, it was agreed that the matter be transferred to Division F for a decision. Liberty Mutual Insurance Company, as the uninsured motorist insurer for Brown & Browning, plaintiffs employer, now appeals. We set aside in part, amend in part, and affirm.in part.
ISSUES
We are called upon to determine a number of critical issues, to-wit:
(1) Whether the Arceneaux test[1] should be our standard of review in viewing the findings of fact and conclusions of the trial court when the trial judge rendering judgment was not the presiding judge at trial;
(2) Whether the trial court erred in its finding that the plaintiff carried his burden of proof regarding causal connexity between his injuries and the on-the-job automobile accident;
(3) Whether the trial court erred in awarding damages for loss of future wages and earning capacity;
(4) Whether the trial court erred in awarding $200,000 for past and future pain and suffering; and
(5) Whether the trial court erred in awarding $20,000 to plaintiffs wife for loss of consortium.
FACTS
On December 3, 1985, plaintiff, Ricky J. Clouatre, was involved in an automobile accident in the course and scope of his employment with Brown & Browning. While stopped at a red light, the van in which he was a passenger was struck from the rear by a truck. He complained of *697 neck and back pain and was transported by ambulance to West Jefferson Hospital where he was treated and released. X-rays revealed a grade one spondylolisthesis, a congenital and often degenerative spinal defect. Clouatre was involved in a second accident on the way home from the hospital but did not require further medical treatment.
Plaintiff was referred to Dr. Arthur Kleinschmidt, an orthopedic specialist, who, after examination, found no objective sign of injury other than the grade one spondy-lolisthesis and subsequently released him to return to work in March 1986. In August of that year, plaintiff was fired for leaving the job without permission. He then secured employment with U-Haul/Worldwide Van Lines, but was terminated two weeks later when a reference check revealed his record with Brown & Browning. He then applied for a job at Avondale Shipyards, but he was turned down when his preemployment X-ray revealed the grade one spondylolisthesis.
On October 28, 1986, he returned to Dr. Kleinschmidt, complaining of alleged recurrent back pain beginning one week prior to this visit; on December 8, 1986, plaintiff sought treatment from Dr. John Schumacher, a neurosurgeon, who recommended hospitalization for diagnostic testing. A cervical myelogram, C-T scan, and EMG nerve conduction studies were performed and all failed to reveal any objective findings other than the grade one spondylolisthesis. Dr. Schumacher recommended physical therapy and vocational rehabilitation. On August 10,1987, Dr. Schumacher assigned plaintiff a 15 percent Hollman physical impairment rating due to his grade one spondylolisthe-sis and released plaintiff from his care.
ANALYSIS — ISSUE ONE
Our standard for review of fact was succinctly set forth by the Louisiana Supreme Court in Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973), concluding:
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
This standard was subsequently clarified by the supreme court in Arceneaux v. Domingue, supra, at 1333 as follows:
As an aid to the exercise of the appellate function of review of facts in civil cases, we attempted to explain, in Canter v. Koehring, supra, without great detail, the appropriate standard. We said that “even though the appellate court may feel that its own evaluations and inferences are as reasonable,” it should not disturb reasonable findings of the trial court when there is conflict in the testimony. We prefaced this observation: “When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.” 283 So.2d 716, 724. (Emphasis added).
We did not foresee that this explanátion would be misunderstood to mean that: “There is no manifest error when the evidence before the trier of fact furnishes a reasonable basis for its finding.” We said the appellate court should not disturb this factual finding in the absence of manifest error. The difference is important. “Manifestly erroneous,” in its simplest terms, means “clearly wrong.” We said, then, that the appel *698 late court should not disturb such a finding of fact unless it is clearly wrong. Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).
(Emphasis in the original.)
Of recent vintage, in Virgil v. Am. Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987), the Louisiana Supreme Court held that the manifest error standard of review applied, even though the evidence before the trier of fact consisted solely of written reports, records, and depositions. The court went on to note that “The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Id. at 826 (emphasis in the original and emphasis supplied). We further note Justice Dennis’ reasoning in his concurrence wherein he states, “the trial judge’s decision is always entitled to at least some deference by a reviewing court. Even a deposition may be susceptible to more than one reasonable reading. If the trial judge’s interpretation is reasonable[,] it should be respected.” Id. at 826.
After all is said and done, and in spite of the fact that this record reflects that the trial judge who rendered the judgment was not the trier of fact, and, ergo, did not have the option of evaluating live testimony, we cannot and should not waiver from the necessary and proper allocation of trial and appellate functions between the respective courts. Accordingly, we hold that the Ar-ceneaux standard for review is applicable here in spite of the unfortunate, not to mention untimely, circumstances of this matter.
ISSUE TWO
We now turn to address the question of whether the plaintiff met his burden of proof demonstrating a causal connection between the accident and his injuries. Our jurisprudence has stated that the burden of proving the existence of damages and the causal connection with the accident rests with the plaintiff. Such proof must be shown by a reasonable preponderance of the evidence. A mere possibility is not sufficient. Coco v. Richland Gen. Contractors, Inc., 411 So.2d 1260 (La.App. 3d Cir.1982), writ denied, 413 So.2d 909 (La.1982).
In Lucas v. Ins. Co. of N. Am., 342 So.2d 591, 596 (La.1977), the Louisiana Supreme Court stated:
A claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Gradney v. Vancouver Plywood Co., 299 So.2d 347 (La.1974); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969); Gates v. Ashy Construction Co., 171 So.2d 742 (La.App. 3d Cir.1965), certiorari denied, 247 La. 678, 173 So.2d 542 (1965).
(Emphasis supplied.)
The record shows that, prior to the accident, Clouatre denied ever having back pain. Following the accident, plaintiff was referred to Dr. Kleinschmidt, an orthopedic specialist, for evaluation and treatment. Dr. Kleinschmidt’s initial examination on December 6, 1985 revealed:
Examination of his back was essentially normal. He stood erect and there was pain on motion. There was no spasm and there was full motion. There was no pelvic tilt. The Trendelenburg sign was negative and there was no neurological deficits, no motor weakness of either upper extremity and no sensory deficits as elicited on pinpoint testing.
*699 Straight leg raising of the right and left lower extremities produced no low back pain nor sciatic type pain at ninety degrees elevation from the horizontal.
X-rays of plaintiffs lumbar sacral spine showed:
The lumbosacral spine was reviewed. There was no evidence of fracture, dislocation or any form of traumatic bone disease. There was a defect of the pars intra-articularis of the posterior elements of the fifth lumbar vertebra with forward displacement of the fifth lumbar vertebral body on the first sacral segment.
There was grade one spondylolisthesis. At that time the lumbosacral joint space was well maintained.
Dr. Kleinschmidt further testifies that he next saw plaintiff on December 20, 1985, at which time plaintiff complained of left hip pain. Once again his back was examined and the exam revealed:
I examined his back again. It was essentially within normal limits. He has well defined musculature but had no muscle spasm; he had a full range of motion, complete reversal of the lumbar lordotic curve on forward bending. He complained of some pain accompanying the ranges of motion.
There was no neurological deficits in the lower extremities. There was full range of motion through the hips without difficulty.
Two weeks later plaintiff returned to Dr. Kleinschmidt’s office, and, at that time, Dr. Kleinschmidt testifies plaintiff stated that “his back was doing better and he was not experiencing any low back pain. The examination was essentially normal — no spasms, full motion and no deficits of the lower extremities.” Plaintiff was not released to return to work at this time, as Dr. Kleinschmidt states that he wanted him to be asymptomatic a little longer. The next office visit was January 17, 1986. According to Dr. Kleinschmidt, plaintiff stated, “[H]e was experiencing no low back pain and he was asymptomatic. The examination was negative, normal.” At this time, he was instructed to return to work on January 20, 1986. Subsequently, plaintiff returned to see Dr. Kleinschmidt on January 31, 1986, stating that he was having too much pain in his back to work. Examination of his back at this time was normal. Again, plaintiff was advised not to return to work. On February 17, 1986, plaintiff returned to the doctor and was released to return to work after being fitted with a corset to support his back. Finally, plaintiff was discharged from Dr. Kleinsch-midt's care on March 3,1986, after plaintiff reported that he had been working at his regular job, was not having any difficulty relating to his back, and was working without lower back pain. Plaintiff was instructed to return to the doctor on an as-needed basis. When asked his opinion regarding plaintiffs injury and any resulting disability, Dr. Kleinschmidt responded:
[A]s a result of the motor vehicular accident, he had a soft tissue injury to the cervical spine in the nature of a muscular ligamentous strain.
[[Image here]]
[H]e probably sustained contusions of the sternum or breastbone, the shoulder and the left rib cage, the left shoulder or left rib cage.
[H]e sustained a softened tissue injury of the lumbar spine in the nature of a muscular ligamentous strain and thus, it was again my opinion that this injury is superimposed on a Grade I spon-dylolisthesis defect at the lumbosacral level.
My opinion at that time, it had resolved itself with no partial permanent physical impairment.
Mr. Clouatre did not return to see Dr. Kleinschmidt until October 28, 1986, and, after complaining of a recurrence of back pain, Dr. Kleinschmidt recommended hospitalization for diagnostic testing on November 12, 1986, but the plaintiff never returned to see him.
On December 8, 1986, plaintiff sought treatment from Dr. Schumacher, a neurosurgeon. Dr. Schumacher’s initial exam revealed:
*700 On examination there was no cervical paraspinous muscle spasm; there was full range of motion in the cervical spine; there was no lumbar paraspi-nous muscle spasm.
He could flex forward and touch his toes without difficulty.
The straight leg raising was negative to ninety degrees bilaterally and the deep tendon reflexes were normal.
There was no focal sensory deficits. That was normal. There was no focal muscular weakness or atrophy, so he had essentially a normal examination.
Plaintiff was admitted to Doctors Hospital of Jefferson on January 19, 1987 for diagnostic evaluation. Plaintiffs myelogram, CT scan, and EMG nerve conduction studies were all negative. Dr. Schumacher further testifies:
Well, based on his history that he had no pain until his vehicular accident and since the accident he has had pain, I felt that he had had congenital or developmental spondylolisthesis which had become aggravated, made symptomatic and had become spondylolisthe-sis, most likely by history from the vehicular accident.
Dr. Schumacher continued to see the plaintiff until August 10, 1987, but at no time did any of his examinations reveal any objective signs.
After a careful review of the record in its entirety, we think it reasonable to conclude that the plaintiff did in fact suffer a soft tissue strain in the lumbar region as a result of the on-the-job automobile accident. Additionally, we think it likewise reasonable to conclude that the plaintiff had a preexisting condition which has been medically described as a “grade one spon-dylolithesis,” which preexisting condition was, we find, aggravated as a result of the on-the-job automobile accident. Ergo, the trial court did not err.
ISSUE THREE
Regarding loss of future wages and earning capacity, it is evident that the plaintiffs unemployment status is totally unrelated to the events of December 3, 1985. Mr. Clouatre was fired from Brown & Browning for insubordination and leaving the job without permission, not because he was physically incapable of performing his duties. By his own admission, he was able to secure a similar manual labor job with U-Haul/Worldwide Van Lines in October 1986 and was terminated only after a reference check revealed an unfavorable report from Brown & Browning. Again, his physical ability was not at issue and was not a factor in his termination.
Additionally, plaintiff admits that when he applied for work with Avondale Shipyards he lied on the application, stating that he’d never had back problems. The sole reason he was turned down for employment was because his preemployment X-ray revealed the presence of a congenital back defect. At that point, the company was totally unaware of plaintiffs past medical history. It would appear then that it was company policy not to hire anyone with a congenital back defect, regardless of whether they would experience any difficulty as a result of it.
Moreover, Dr. Schumacher testifies that plaintiff can work an eight-hour day. Ms. Delores Shannon, a vocational rehabilitation specialist, testifies that her office saw Clouatre on only one occasion and that given his physical impairment due to the grade one spondylolisthesis and his educational level, he will probably be restricted to unskilled jobs. However, Ms. Shannon also states that no effort has been made to place Clouatre in any employment position, as she has not been requested to do so. Finally, plaintiff himself testifies that the only effort he has made toward seeking gainful employment since October 1986 was to spend two days going to various stores filling out applications and going on one job interview at Winn-Dixie.
It is evident from the record that plaintiffs unemployment status resulted from his own actions and not as a result of any injury he may have sustained on December 3, 1985.
Therefore, we find that the unfortunate circumstances which plaintiff now faces were brought about by his own actions, for *701 which defendant is clearly not responsible. The fact that plaintiffs educational level is below average and that he has a congenital back defect are neither the fault of nor the responsibility of the defendant. Hence, the trial court’s award for lost wages and loss of future earning capacity was “clearly wrong.”
ISSUE FOUR
We now consider the trial court’s award for general damages.
Louisiana Civil Code Article 1934(3) and Louisiana Supreme Court cases set forth the principles of appellate review for assessment of general damages. Article 1934(3) provides that in assessing general damages, “much discretion must be left to the judge or jury_” Applying Article 1934(3) to review of damage awards, Supreme Court decisions have indicated a methodology for this review. See, Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, 341 So.2d 332 (La.1976); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Co., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). Only if the record “clearly reveals” that the trier of fact abused its discretion in making its award of damages, can we disturb an award of the trial court. Coco, 341 So.2d 332, 335. Reck v. Stevens explained,
“Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case.” Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
Arena v. Winn-Dixie La., Inc., 441 So.2d 73, 74 (La.App. 5th Cir.1983), writ denied, 445 So.2d 1231 (La.1984).
We are satisfied that the record demonstrates that the plaintiff suffered a soft tissue injury over a grade one spondylolis-thesis. However, he failed to prove, by a preponderance of the evidence, that this aggravation of his congenital defect resulted, in any sense, in a long-term disability. Therefore, we find the award of $200,000 for past and future pain was clearly an abuse of the trial court’s discretion. Having found that the trial court abused its discretion, our jurisprudence as found in Coco provides that we now can resort to prior awards for purposes of determining what would be the appropriate award. See Reck v. Stevens, 373 So.2d 498, 501 (La.1979) and Coco, supra. Here, a quantum study on spondylolisthesis reveals that awards for aggravation of a preexisting spondylolisthesis without disc involvement range from $1,000 to $23,000. Therefore, plaintiff’s award should be reduced to $23,-000, the highest point which is reasonably within the discretion of the trier of fact.
ISSUE FIVE
An award for loss of consortium may be made when there has been some measurable or compensable loss. The concept of loss of consortium has been broken down into seven component parts. These are loss of: (1) love and affection, (2) society and companionship, (3) sexual relations, (4) right of performance of material services, (5) right of support, (6) aid and assistance, and lastly, (7) felicity. See Finley v. Bass, 478 So.2d 608, 614 (La.App. 2d Cir.1985).
In reviewing each of these elements, we find that, as to the first element, Mrs. Clouatre does not allege any loss of love and affection since the accident. Second, Mr. Clouatre is spending much more time at home with his wife and family, providing them with more togetherness than they previously enjoyed. However, Mrs. Cloua-tre complains that their home has become a prison, as her husband prefers staying home because he is in pain, but the facts do not support this assertion. The facts are that the plaintiff was able to return to work three months after the accident and that, prior to his discharge, not only was he working full time, but he was also putting in overtime as well. Subsequent to this, the record is simply devoid of any facts indicating that plaintiffs condition deteriorated to such an extent as to make him a virtual invalid, unable to leave the confines of their home. Third, Mrs. Clouatre testifies that their sexual relationship “has *702 changed.” However, she has managed to become pregnant twice since the accident. Fourth, Mrs. Clouatre. testifies that her husband is unable to help her with everyday household chores and that she has developed a hernia as a result of having to take out the garbage and carry the laundry basket. Her claim regarding the existence of and cause of any hernia she may have is not supported by any receivable evidence of record. Fifth, Mr. Clouatre has received worker’s compensation benefits since the time of the accident. Moreover, plaintiff lost his job through his own fault; therefore, she cannot claim loss of support due to the accident. Sixth, aid and assistance has not been sufficiently demonstrated separate and apart from material services to justify an award. Finally, as to felicity, Mrs. Clouatre does not allege any particular loss distinct from the other elements enumerated.
In the final analysis, we find that Mrs. Clouatre has failed to prove any loss which would justify an award of $20,000. Therefore, we find that the trial court abused its discretion and the award should be reduced to $5,000.
For the reasons assigned, the judgment of the trial court dated February 8, 1989 is hereby set aside in the following respects: past wages and future lost wages and loss of earning capacity. It is further, ordered, adjudged and decreed that the trial court’s judgment is to be amended in the following respects: past and future pain and suffering, permanent disability, and mental anguish and distress is to be amended from $200,000 to $23,000. Finally, the judgment is to be amended in that the trial court’s decree that there be judgment in favor of Debra Gomez, wife of Rickey J. Clouatre, and against Liberty Mutual Insurance Company, as uninsured motorist insurer for Brown & Browning of New Orleans, Inc., in the amount of $20,000 for loss of consortium is hereby reduced to $5,000. In all other respects, the judgment of the trial court dated February 8, 1989 is hereby affirmed. Each party is to bear its own costs of this appeal.
SET ASIDE IN PART, AMENDED IN PART, AND AFFIRMED IN PART.
GAUDIN, J., concurs in part.

. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).