714 So.2d 67 (1998)
Andre CAUBARREAUX, et al., Plaintiffs-Appellees,
v.
E.I. duPont DE NEMOURS, et al., Defendant-Appellant.
No. 97-978.
Court of Appeal of Louisiana, Third Circuit.
May 6, 1998.
Opinion Granting Rehearing July 9, 1998.
*68 Brian M. Caubarreaux, Marksville, Jeffery F. Speer, Lafayette, P.J. LaBorde, Jr., for Andre Caubarreaux, et al.
Lawrence Emerson Abbott, New Orleans, Deborah DeRoche Kuchler, New Orleans, Anthony Jennings Roy, III, Marksville, Patrice Wightman Oppenheim, New Orleans, for E.I. DuPont de Nemours.
Douglas Lee Bryan, Marksville, for Avoyelles Floor Covering.
Before DOUCET, C.J., and PETERS and SULLIVAN, JJ.
DOUCET, Chief Judge.
This case involves a claim by plaintiff, Andre Caubarreaux, against E.I. duPont de Nemours and Company (hereinafter referred to as "duPont") wherein he alleges that he sustained permanent injuries as a result of installing duPont Stainmaster carpet in his home. The main issues before us in this appeal concern the application of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) to this case and the reopening of the record for further evidence.

FACTS
Plaintiff, Andre Caubarreaux, had duPont Stainmaster carpet installed in his home on November 30, 1992. Plaintiff claims that the Stainmaster carpeting installed in his home contained toxic chemicals, the emission or "off-gassing" of which caused or contributed to the respiratory problems from which Andre claims he suffers. Andre and his wife, Susan, filed suit, individually and on behalf of their minor children, Alexis and Angelle Caubarreaux. Discovery continued for several years. Trial was held on May 28, 1996, through June 10th, 1996. On January 13, 1997, a final judgment was rendered granting plaintiffs general damages of $2,250,000.00, total economic damages of $1,904,550.00, $22,413.92 in past and future medical expenses, and loss of consortium damages in the amount of $50,000.00. duPont moved for a new trial which was denied. duPont appeals.

ASSIGNMENTS OF ERROR
Defendant contends that, among other issues, the trial court erred in failing to evaluate the expert testimony under the Daubert/Foret standard. In Daubert, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, the United States Supreme Court was concerned with determining the admissibility of new techniques as a basis for expert scientific testimony. Additionally, duPont contends that the record is incomplete because the trial court erred in discouraging duPont from introducing evidence to rebut the testimony of Dr. Rosalind C. Anderson, one of the plaintiffs' main expert witnesses.
In light of this court's determination that this matter should be remanded for a hearing as required by Daubert and for completion of the record, we will limit our discussion to these issues.

I. DAUBERT

A. Daubert Proceedings

On March 13, 1996, the trial was set, as a judge trial, for May 28, 1996. On March 14, 1996, duPont filed a Defendant's Motion in Limine to Exclude Petitioners' Experts, Kenneth P. Reed, G. Gary Guidry, and Donna L. Breen. In its motion, duPont requested the court to hold a preliminary evidentiary hearing on its motion in limine to exclude the testimony of those experts based upon Daubert, 509 U.S. 579, 113 S.Ct. 2786 and the Louisiana Supreme Court's decision in State v. Foret, 628 So.2d 1116 (La.1993). On March 26, 1996, duPont subpoenaed all three experts for the hearing scheduled on April 9, 1996. In response, on April 2,1996, plaintiffs moved to quash the subpoenas. Plaintiffs also moved to continue the hearing, which was denied.
The trial court granted plaintiffs' motion to quash and stated in his amended ruling of April 4, 1996, as follows:
Plaintiffs had previously filed a Motion to Quash Subpoenas. The Court had denied that Motion because it required an ex parte ruling without input from the defendants. The Court now grants the Motion for the following reasons:

*69 Subpoenas were issued for three people, Kenneth P. Reed, Dr. Gary Guidry and Dr. Donna Breen, to appear at a Daubert/Foret hearing set before this Court on April 9[sic] and 10th. After denying the Motion, the Court received a Memorandum In Support of Defendant's Motion In Limine to Exclude Peitioner's [sic] Experts. That memorandum was very thorough in its arguments and included extensive depositions of the three individuals named hereinabove. The Court can see no reason for insisting on these people's presence at this hearing other than for purposes of harassment. Their live tesimony [sic] will add nothing to the determination as to whether they are competent to testify in a bench trial.
For the foregoing reasons, the subpoenas previously issued by defendants to Kenneth Reed, Gary Guidry and Donna Breen are hereby quashed.
Defendant applied for writs from this ruling, and although other motions were heard at the April 9, 1996, hearing, the minutes reflect that the court did not hear duPont's motion in limine to exclude the testimony of Drs. Kenneth P. Reed, G. Gary Guidry and Donna L. Breen based upon Daubert.
duPont took writs from the quashing of the subpoenas. This court denied the writ application on May 6, 1996. Plaintiffs contend, in their post-hearing memorandum, that "the trial court in this case quashed the subpoenas requested by duPont on the grounds that it had all of the relevant testimony before it and would weigh the evidence accordingly during his bench trial." However, this court did not so find.
This court affirmed the trial court's finding that, because complete depositions were taken of Dr. Reed on December 18, 1995, of Dr. Gary Guidry on December 20, 1995, and of Dr. Donna Breen on November 7, 1995, a Daubert ruling could be made using depositions as opposed to live testimony at the Daubert hearing. Neither the trial court nor this court has ever reached the issue of whether or not a Daubert hearing was required.
Subsequently, on May 21, 1996, duPont filed a motion to reurge and a corresponding supplemental memorandum in support of its motion in limine to exclude petitioners' experts Kenneth P. Reed, G. Gary Guidry, and Donna L. Breen. In its motion to reurge, duPont stated:
duPont advised the Court and all counsel on April 8, 1996 that it would not go forward with the hearing on its Motion in Limine in light of this Court's April 4, 1996 Amended Ruling quashing the subpoenas served upon Drs. Guidry and Breen. duPont now reurges its Motion in Limine and in support thereof submits several Affidavits, articles, and other matters which this Court should consider in keeping with its obligation to conduct a pre-trial examination of Drs. Reed, Guidry and Breen's opinions under Daubert and Foret.

Although duPont did not reset the matter for hearing or file a rule to show cause, the motion states that duPont "stands ready to conduct a hearing on this issue and submits that such a hearing be held on May 28,1996, prior to the commence [sic] of the trial of this matter."
duPont's motion to reurge its motion in limine prayed that:
this Court ... conduct a hearing and/or make a determination, prior to the commencement of trial, that the opinions of the petitioners' experts, Kenneth P. Reed, G. Gary Guidry and Donna L. Breen, do not satisfy the requirements dictated by the United States Supreme Court in Daubert and the Louisiana Supreme Court in Foret and that their testimony therefore be excluded from the trial of this case.
Although duPont filed a Motion to Reurge its Motion in Limine praying that the motion be heard at trial, the trial court did not hold such a hearing and proceeded to the trial on the merits. Similarly, no pretrial Daubert hearing took place as to plaintiffs' other major expert witness, Dr. Rosalind Anderson.

B. Need for Daubert Hearing

The first issue before this court is whether the trial court erred in failing to hold a Daubert hearing as to plaintiffs' expert witnesses. *70 duPont relies upon Daubert, 509 U.S. 579, 113 S.Ct. 2786, for its contention that duPont was entitled to a live pretrial evidentiary hearing, or Daubert hearing, with plaintiffs' experts testifying, in order to give the trial court an opportunity to determine prior to trial whether their testimony was reliable.
This court in State v. Schmidt, 97-249, p. 8-9 (La.App. 3 Cir. 7/29/97); 699 So.2d 448 at 452-53, writ denied, 97-2220 (La.12/19/97); 706 So.2d 451, recently summarized the effect of Daubert as follows,:
The general rule concerning admissibility of expert testimony is found in La.Code Evid. art. 702, which provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Prior to 1993, the general test for admissibility of expert scientific testimony involving new techniques was the "general acceptance" standard of Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923). In other words, an expert opinion based on a new scientific procedure or technique was not admissible unless the procedure or technique had been generally accepted as reliable by recognized authorities in the field.
In 1993, the United States Supreme Court rendered its decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 587-89, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993), wherein it concluded that, with the adoption of the Federal Rules of Evidence,
a rigid "general acceptance" requirement would be at odds with the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to `opinion' testimony." Beech Aircraft Corp. v. Rainey, 488 U.S. [153] at 169, 109 S.Ct. [439] at 450, 102 L.Ed.2d 445 [1988]....
In Daubert, the Supreme Court suggested that the trial court should consider four factors in determining whether expert scientific evidence is reliable: (1) whether the theory or technique can be, and has been, tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error of the theory or technique; and (4) whether the theory or technique is generally accepted in the scientific community. Thus, under the Daubert guidelines, general acceptance in the scientific community is only one of the factors to be considered. Under this evaluation procedure, the trial court assumes "gatekeeping responsibility" to ensure that scientific evidence admitted in a trial is both relevant and reliable. Id. Still, the focus of the trial court's inquiry is not without limits. The focus of the inquiry "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595, 113 S.Ct. at 2797.
Because La.Code Evid. art. 702 is identical to Rule 702 of the Federal Rules of Evidence, the Louisiana Supreme Court adopted the Daubert test as the test to be applied in Louisiana. See State v. Foret, 628 So.2d 1116 (La.1993).
In Foret, 628 So.2d at 1122, the supreme court discussed the Daubert standard outlined above, as follows:
The reliability of expert testimony is to be ensured by a requirement that there be "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." [Daubert, 509 U.S. at 591-92, 113 S.Ct. at 2796] This connection is to be examined in light of "a preliminary assessment" by the trial court "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." Id.....
The court also stated that other rules of evidence govern this testimony, mainly F.R.E. 403's balancing test that will exclude probative evidence if outweighed by its potential for unfair prejudice. The Court noted the possibility that the expert's testimony can be quite misleading and prejudicial if this gatekeeping role is not properly satisfied, requiring a flexible approach and a careful evaluation of the *71 methodology surrounding the testimony and its conclusions:
Conjectures that are probably wrong are of little use, however, in the project of reaching a quick, final, and binding legal judgment-often of great consequence-about a particular set of events in the past. We recognize that in practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations. That, nevertheless, is the balance struck by Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes.
Id., [509] U.S. at [597], 113 S.Ct. at 2798[-99] (footnote omitted).
duPont contends that the trial court, acting as a "gatekeeper," must exercise its duty by holding a hearing prior to trial, at which the petitioners' experts will testify, to determine whether their expert opinions and related testimony, and specifically, the methodology underlying their opinions, are qualified to be introduced at the trial on the merits under Daubert and Foret.
Therefore, we must determine if the trial court performed its gatekeeping function in this case, as required under Daubert.

C. Trial Court's Gatekeeping Function

Although duPont requested a Daubert hearing and later reurged its motion shortly before trial, the trial court neither held such a hearing nor ruled on whether the factors enumerated in Daubert were satisfied.
In Daubert, 509 U.S. at 592, 113 S.Ct. at 2796, the Supreme Court stated:
Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.
(Emphasis added) (footnotes omitted).
Fed.R.Evid. 104(a) provides:
Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court....
Louisiana's counterpart to Fed.R.Evid. 104(a), La.Code Evid. art. 104(a), states that:
A. Questions of admissibility generally. Preliminary questions concerning the competency or qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court....
Additionally, La.Code Civ.P. art. 1551 states that:
A. In any civil action in a district court the court may in its discretion direct the attorneys for the parties to appear before it for conferences to consider any of the following:
(1) The simplification of the issues....
(8) Such other matters as may aid in the disposition of the action.
Under Daubert and the above provisions, the trial court is mandated to either order a pretrial or status conference under La.Code Civ.P. art. 1551 to discuss and simplify any Daubert issues or, if still not resolved, hold a pretrial hearing and rule on any pending Daubert issues pursuant to La.Code Evid. 104(a).
We find that, because Louisiana has adopted Daubert and Foret, duPont had the right to a preliminary hearing, as to plaintiffs' scientific experts, Drs. Reed and Anderson, in addition to Plaintiffs' clinical experts, Drs. Guidry and Breen. Because duPont requested a preliminary Daubert hearing and ruling prior to trial, the trial court no longer had the discretion to deny duPont's motion for a hearing and was required to give the parties a ruling applying Daubert. Although the role of "gatekeeper" is a difficult burden on the trial court, the trial court is in a better position than an appellate court to make a Daubert ruling.
*72 This will provide the trial court with a timely and sufficient opportunity to analyze the evidence tendered, in order to allow the rendering of a well-considered ruling. This Daubert ruling must take place prior to the presentation of the testimony at issue and is crucial to affording the trial court such an opportunity. Additionally, ensuring that a Daubert hearing is conducted prior to trial will give the trial court the opportunity to avail itself of La.Code Civ.P. art. 373 and appoint an expert to assist with the case, if necessaryan option not available to this court. Finally, we determine that a remand will provide the appellant with the opportunity to have the trial court rule on its motion in limine prior to trial, affording the parties the opportunity to exercise their rights to either take emergency writs or request a stay prior to trial in order to allow a complete review of the contested issues.
Therefore, the case will be remanded for a Daubert hearing.

II. COMPLETION OF RECORD

We find an additional error that requires a remandin that the trial court changed its position as to Dr. Anderson's testimony, which resulted in prejudice to duPont's case. At trial, the trial court assured the defendant that it would put no weight on the testimony of Dr. Anderson. duPont then allowed its rebuttal witnesses to leave without testifying. However, in its reasons for judgment, the trial court relied upon Dr. Anderson as corroborative support for the testimony of Dr. Reed, plaintiffs' main witness on the issue of causation.
During trial Dr. Michael Gill was called to testify, specifically to rebut the testimony of Dr. Anderson. After Dr. Gill's testimony was completed, the trial judge stated in open court and on the record, as follows:
All right. Let me tell you what the court has found thus far. The court places little or no weight on Dr. Anderson's testimony. I find her methodology to be totally unreliable.
Later in the trial, duPont prepared to call Dr. Richard Schlesinger, again to rebut Dr. Anderson. Counsel for duPont stated on the record that they would call Dr. Schlesinger (who was present in the courtroom), although it was understood that the court did not want to hear any more testimony regarding Dr. Anderson.
This exchange followed between Ms. Kuchler and the court:
BY MS. KUCHLEN [sic]:
Judge, our next witness would be Dr. Richard Sleshenger [sic]. He's an inhalation toxicologist from New York University School of Medicine. We had brought him in before we hear [sic] your ruling yesterday. And out of an abundance of caution, I just want to make clear that he's here and available to testify, but his testimony would deal with his role as a peer reviewer for the EPA on Dr. Anderson's testifying.
BY THE COURT:
I have ruled very clearly, hopefully, that I place no emphasis on Dr. Anderson's testimony.
BY MS. KUCHLEN [sic]:
Then we would release Dr. Sleshenger [sic].
BY THE COURT:
I think her methodology was wrong.
BY MS. KUCHLEN [sic]:
Then we would release Dr. Sleshenger [sic].
BY THE COURT:
Next witness, please.
This action on the part of the trial court, in stating that it was not going to rely on Dr. Anderson and then, in turn, relying on Dr. Anderson in its reasons for judgment, whether intentionally or inadvertently, effectively deprived duPont of its right to offer rebuttal testimony to Dr. Anderson's testimony.
The practical effect of this action on the part of the trial court was the disallowance of evidence which duPont attempted to tender. This prevented duPont from making a complete record.
Insofar as this court has no way of determining whether Dr. Schlesinger's testimony would have had an effect on the finder of fact and on the outcome of the case, we find that a remand is appropriate. A remand will allow for the completion of the record and *73 the addition of testimony by Dr. Schlesinger, whom duPont did not call at trial in reliance upon the trial court's representation. Without such a remand, duPont would be highly prejudiced if an appellate court attempted to render a Daubert ruling without a complete record and determined that plaintiffs' experts, mainly Drs. Reed and Anderson's testimony, were reliable and relevant under Daubert. Thus, we find that a remand would best serve the interests of justice.

CONCLUSION
For these reasons, the January 13, 1997, decision of the 12th Judicial District Court for the Parish of Avoyelles, State of Louisiana, is hereby set aside. The record is remanded to the trial court for completion of the record, to include a preliminary hearing on the issue of the admissibility of expert witness testimony, in light of Daubert, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. This matter is also remanded to reopen the record to allow duPont to introduce the testimony of Dr. Schlesinger. Additionally, the trial court may use its discretion in determining new issues which may arise as a result of the trial court's rulings on the Daubert hearing, even to the extent of reopening for testimony of witnesses.
SET ASIDE AND REMANDED.

ON REHEARING
PER CURIAM.

INTRODUCTION
In our original opinion in this matter rendered May 6, 1989, we set aside the January 13, 1997, decision of the 12th Judicial District Court for the Parish of Avoyelles, State of Louisiana, and remanded the matter to the trial court for completion of the record, to include a preliminary hearing on the issue of the admissibility of expert witness testimony, in light of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). We also remanded the matter to reopen the record to allow duPont to introduce the testimony of Dr. Schlesinger. Finally, we instructed the trial court to use its discretion in determining new issues which may arise as a result of the trial court's rulings on the Daubert hearing, even to the extent of reopening for testimony of witnesses.
Thereafter, duPont applied for rehearing, which we now grant, set aside our judgment of May 6, 1998, and remand the matter for new trial.

ANALYSIS
In our original review of May 6, 1989, we clearly reviewed the issue of duPont's right to a preliminary hearing under Daubert, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which we reaffirm without comment.
On rehearing, we have revisited the issue of whether duPont is entitled to a new trial in this matter. Our original opinion granted a partial new trial. However, the circumstances in this particular case are unusual, specifically due to the recusation of the original trial court judge, after reasons for judgment were rendered but before judgment. Due to the uniqueness of the factual scenario, we have determined that a remand for a new trial is the more appropriate result and would better serve the interests of justice. Our purpose in granting a new trial is to grant the new trial judge and the parties great latitude in insuring that the trial court has before it adequate evidence to make an informed and equitable decision. Although all testimony received in the former trial shall remain in evidence pursuant to La.Code Civ.P. art. 1978, live testimony and additional witnesses may be tendered pursuant to this remand.
A similar result ensued in Clouatre v. Liberty Mutual Insurance Co., 557 So.2d 696 (La.App. 5 Cir.1989), a case in which the trial judge died before rendering judgment. In the original opinion, the fifth circuit set aside the trial court judgment in part, amended in part and affirmed in part. However, on rehearing, the court held that "common sense" mandated a remand for a new trial in order to allow the new trial judge the benefit of live testimony. Similarly, we find that, under the unusual factual scenario of this case, "common sense" mandates the remand of the case for a new trial.
*74 On rehearing, we have also revisited the issue of duPont's right to a jury trial based upon its cross claim against Wiley Moreau d/b/a/ Avoyelles Floor Covering. We have determined that the trial court was within its discretion in severing duPont's cross claim and request for jury trial, pursuant to La.Code Civ.P. art. 1038. See Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La. App. 3 Cir.1991); Landry v. State Farm Fire & Cas. Co., 504 So.2d 171 (La.App. 3 Cir. 1987). The original petition was filed September 13, 1993; the original cross claim was filed more than two years later, on October 17, 1995. At that time the trial was set for January 18, 1996. Subsequently, another amended cross claim was filed by duPont on April 8, 1996, which cross claim brought additional claims against Wiley Moreau d/b/a Avoyelles Floor Covering. At the time the amended cross claim was filed the trial was reset for trial to commence on May 28, 1996. Apparently, the main demand was ready for trial at the filing of both the original and the amended cross claims. The trial court was within its discretion in finding that, without the severance, allowing a jury trial and the new claims to be litigated with the main demand at that late date would have retarded the progress of the main demand.

CONCLUSION
For the reasons assigned in our original May 6, 1998, opinion, this matter is hereby remanded for a preliminary hearing in light of Daubert, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Additionally, for the reasons assigned herein, duPont's application for rehearing is hereby granted and this matter is remanded for a new trial in its entirety.
TRIAL COURT JUDGMENT OF JANUARY 13, 1997, SET ASIDE AND MATTER REMANDED FOR NEW TRIAL.